**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE KEVIN S. BENNETT TRUST U/A DATED AUGUST 2, 1989, et al., | ) ) ) | |
| Plaintiffs / Counterclaim Defendants, | ) ) ) | |
| v. | ) ) | Civ. No. 1:07-cv-01519 (CKK) |
| ROBERT S. BENNETT, as Trustee for the BETTY KOPLAR BENNETT TRUST AGREEMENT DATED MAY 13, 1992, | ) ) ) ) | |
| Defendant / Counterclaimant. | ) | |

**PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM
FOR FAILURE TO STATE A CLAIM**

Plaintiffs and Counterclaim-Defendants, to wit, The Kevin S. Bennett Trust U/A Dated August 2, 1989 (by its Co-Trustees, LuAnn L. Bennett and Lawrence A. Miller, Esquire), Kevin S. Bennett, The Bryan G. Bennett Trust U/A The Trust Agreement Dated August 2, 1989 (by its Co-Trustees, LuAnn L. Bennett and Lawrence A. Miller, Esquire), Bryan G. Bennett and The Richard A. Bennett, III Trust U/A The Trust Agreement Dated August 2, 1989 (by its Co-Trustees, LuAnn L. Bennett and Lawrence A. Miller, Esquire), hereby move, by counsel and pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Counterclaim brought by Defendant and Counterclaimant Robert S. Bennett, as Trustee for the Betty Koplar Bennett Trust Agreement Dated May 13, 1992, for failure to state a claim upon which relief may be granted, and to enter the attached proposed Order dismissing said Counterclaim with prejudice.

In support thereof, Plaintiffs respectively refer this Court to the accompanying Memorandum of Points and Authorities.

Dated:  October 9, 2007

Respectfully submitted,

DRINKER BIDDLE & REATH LLP


By: /s/ Brian A. Coleman
    Allen V. Farber (D.C. Bar No. 912865)
    Brian A. Coleman (D.C. Bar No. 459201)
    1500 K Street, N.W., Suite 1100
    Washington, D.C.  20005
    (202) 842-8800

*Counsel for Plaintiffs / Counterclaim Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Court through the ECF system on the 9th of October, 2007, and that service will be made electronically by the Court's system to Robert A. Van Kirk, counsel for Defendant and Counterclaimant.

/s/  Brian A. Coleman

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **THE KEVIN S. BENNETT TRUST U/A** | ) | |
| **DATED AUGUST 2, 1989, et al.,** | ) | |
| | ) | |
| **Plaintiffs / Counterclaim Defendants,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Civ. No. 1:07-cv-01519 (CKK)** |
| | ) | |
| **ROBERT S. BENNETT, as Trustee for the** | ) | |
| **BETTY KOPLAR BENNETT TRUST** | ) | |
| **AGREEMENT DATED MAY 13, 1992,** | ) | |
| | ) | |
| **Defendant / Counterclaimant.** | ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIM
FOR FAILURE TO STATE A CLAIM**

Plaintiffs The Kevin S. Bennett Trust U/A Dated August 2, 1989 (by its Co-Trustees, LuAnn L. Bennett and Lawrence A. Miller, Esquire), Kevin S. Bennett, The Bryan G. Bennett Trust U/A The Trust Agreement Dated August 2, 1989 (by its Co-Trustees, LuAnn L. Bennett and Lawrence A. Miller, Esquire), Bryan G. Bennett and The Richard A. Bennett, III Trust U/A The Trust Agreement Dated August 2, 1989 (by its Co-Trustees, LuAnn L. Bennett and Lawrence A. Miller, Esquire) (collectively "Plaintiffs"), hereby state as follows in support of their motion, brought pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Counterclaim asserted by Defendant Robert S. Bennett, as Trustee for the Betty Koplar Bennett Trust Agreement Dated May 13, 1992, for failure to state a claim upon which relief may be granted.

**I. INTRODUCTION**

This action arises out of a dispute concerning ownership of a 5% share in the limited partnership known as New Jersey and H Limited Partnership. Plaintiffs maintain that they received the 5% share by distribution under the Betty Koplar Bennett Trust Agreement Dated

August 2, 1989, as amended (hereinafter the "Betty 1989 Trust").  Defendant, however, in his

purported capacity as sole trustee of the Betty Koplar Bennett Trust Agreement Dated May 13,

1992, as amended (hereinafter the "Betty 1992 Trust"), has attempted to vote and otherwise

assert control over that 5% share.  Plaintiffs therefore brought a Complaint for Declaratory

Judgment and Injunctive Relief (the "Complaint") seeking a judicial declaration that they are the

rightful owners of the 5% share, and enjoining Defendant from acting contrary to that interest.

Alongside his Answer to the Complaint, Defendant has now brought a Counterclaim of

his own, in which he contends that Betty K. Bennett – the life beneficiary of the Betty 1989 Trust

– *assigned*, on or about July 30, 1992, the interest in the New Jersey and H Limited Partnership

to the Betty 1992 Trust.  According to Defendant, the New Jersey and H Limited Partnership

then accepted that assignment, all of which Defendant contends is evidenced by the Assignment

attached to the Counterclaim as Attachment A (hereinafter the "1992 Assignment").  Based on

these allegations, Defendant alleges that it is entitled to a judicial declaration of his own that the

Betty 1992 Trust is the rightful owner of the 5% share in New Jersey and H Limited Partnership.

Defendant's theory, however, is based on a legal impossibility.  A review of the 1992

Assignment, together with the Betty 1989 Trust that Defendant implicitly incorporates by

reference, demonstrates that, for either of two independent reasons, Betty K. Bennett could not

possibly have assigned effectively the Betty 1989 Trust's 5% share to the Betty 1992 Trust.

First, the 1992 Assignment could not, as a matter of law, have been a valid assignment of

the 5% interest in New Jersey and H held by the Betty 1989 Trust.  This is because the Betty

1989 Trust – the original owner of the 5% share – contains an express restraint on alienation:

"No beneficiary of any trust hereunder shall have any right (other than a right to disclaim) to

assign, transfer, hypothecate, or otherwise encumber his or her interest in any trust benefits or

payments . . . ." As such, Betty K. Bennett, as the life beneficiary of the Betty 1989 Trust, was barred from assigning away her benefits under that trust. Indeed, this was not a mere boilerplate condition, but rather under governing law was part of the "spendthrift provision" that was essential to protect the trust assets from creditors. The 1992 Assignment, if enforced, would wholly destroy the most fundamental character of the trust itself.

Second, even if the 1992 Assignment otherwise were enforceable, it *still* would not have impacted the Betty 1989 Trust's ownership of the 5% share. This is because Betty K. Bennett, the purported assignor, did not own the 5% share – rather, it was owned by the Betty 1989 Trust. As the trust document reflects, Betty K. Bennett was only a life beneficiary of the Betty 1989 Trust, which means that she could receive *only* life distributions under that trust, and even then *only* at the discretion or action of the Trustees and otherwise subject to the terms of that trust agreement. Thus, even if the 1992 Assignment were fully enforceable, all that Betty K. Bennett assigned was her right to receive lifetime distributions under the Betty 1989 Trust, and had no impact on that trust's ownership of the 5% share, which was held for the remainder beneficiaries, Plaintiffs herein. Simply put, Betty K. Bennett could not assign what she did not own.

Both of these defects in Defendant's Counterclaim are readily apparent from Defendant's pleadings and the documents attached thereto or incorporated therein. The restraint on alienation language is set forth in the Betty 1989 Trust itself, and Betty K. Bennett's status as the life beneficiary of the Betty 1989 Trust likewise is stated in that formative document. It follows that, for either of these reasons, Defendant cannot state a claim upon which relief may be granted within the meaning of Rule 12(b)(6). The Counterclaim should be dismissed accordingly.

-3-

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of a pleading.  To survive such a

motion, the pleading must present "enough facts to state a claim to relief that is plausible on its

face" and those facts "must be enough to raise a right to relief above the speculative level." Bell

Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 1974 (2007).  The court "must treat the

complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences

that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 342 U.S. App.

D.C. 268, 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, "the court need not accept inferences

drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint.  Nor

must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI

Commc'ns Corp., 305 U.S. App. D.C. 60, 16 F.3d 1271, 1276 (D.C. Cir. 1994); see generally

Juergens v. Urban Title Servs., Inc., Civ. No. 06-1524 (CKK), 2007 U.S. Dist. LEXIS 38002

(D.D.C. May 25, 2007) (Kollar-Kotelly, J.).

In deciding a 12(b)(6) motion, the Court may consider only "the facts alleged in the

complaint, documents attached as exhibits or incorporated by reference in the complaint, and

matters about which the Court may take judicial notice." Gustave-Schmidt v. Chao, 226 F.

Supp. 2d 191, 196 (D.D.C. 2002).  Included among the documents of which the Court may take

judicial notice are the plaintiff's or counterclaimant's other publicly-filed pleadings, such as an

answer. See Marshall County Health Care Auth. v. Shalala, 300 U.S. App. D.C. 263, 988 F.2d

1221, 1222 (D.C. Cir. 1993) (the district court may . . . examine matters of public record in

ruling on a Rule 12(b)(6) motion"); Covad Comms. Co. v. Bell Atlantic Corp., 407 F.3d 1220,

1222 (D.C. Cir. 2005) (district court may consider pleadings from court proceedings on Rule

12(b)(6) motion); Braude & Margulies, P.C. v. Fireman's Fund Ins. Co., 468 F. Supp. 2d 190,

195 (D.D.C. 2007) (same).  Further, in determining whether a given document is deemed

"incorporated by reference" for purposes of consideration on a 12(b)(6) motion, courts in this

Circuit do not merely ascertain whether a given document is expressly incorporated, but rather

look to whether that document is both "referred to" in the pleading and "integral to [the

pleader's] claims."  Schoenman v. Federal Bureau of Investigation, Civ. No. 04-2202 (CKK),

2006 U.S. Dist. LEXIS 14905, at *36 (D.D.C. Mar. 31, 2006) (Kollar-Kotelly, J.).[1]

Accordingly, in ascertaining the legal sufficiency of Defendant's claim, the Court may

consider the allegations in the Counterclaim, the attachment to that pleading (the 1992

Assignment), the statements in Defendant's Answer, and the contents of the Betty 1989 Trust

which is, as discussed below, referenced in the Counterclaim and central to Defendant's claims.

### III.  STATEMENT OF FACTS

The basis of Defendant's claim that the Betty 1992 Trust owns the 5% share in New

Jersey and H Limited Partnership is straightforward:  Ownership of the 5% share was transferred

from the Betty 1989 Trust to the Betty 1992 Trust by operation of the 1992 Assignment.  See

generally Answer and Counterclaim.  These factual allegations are set forth below, as amplified

by the text of the 1992 Assignment attached to those pleadings and the Betty 1989 Trust

incorporated by reference therein (and attached hereto as Exhibit 1).

---

[1] As this Court explained in Schoenman in applying this latter rule: "in an oft-cited case, Vanover v. Hantman, 77 F. Supp. 2d 91 (D.D.C. 1999), Judge Thomas A. Flannery noted that 'where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.'" 2006 U.S. Dist. LEXIS 14905 at *36-37; accord Krooth & Altman v. North Am. Life Assur. Co., 134 F. Supp. 2d 96, 99 (D.D.C. 2001) (considering on 12(b)(6) moton materials "referred to in the complaint, and central to plaintiffs' claims"); Hayes v. Chartered Health Plan, Civ. No. 01-1188 (HHK), 2006 U.S. Dist. LEXIS 75378 at *7 n.1 (Oct. 17, 2006) (same); New York State Bar Ass'n v. Federal Trade Comm'n, 276 F. Supp. 2d 110, 114 n.6 (D.D.C. 2003) (collecting cases).

A.     Defendant's Allegations in his Answer and Counterclaim

In answering Plaintiffs' Complaint, Defendant affirmatively states he "is the sole trustee of the Betty Koplar Bennett Trust Agreement Dated May 13, 1992 ('Betty 1992 Trust'), that the Betty 1992 Trust is the owner of a 5% share in a limited partnership known as the New Jersey and H Limited Partnership, and that as trustee of the Betty 1992 Trust he has voted the 5% share with regard to a recent proposed transaction." See Answer at ¶ 1. Defendant later alleges in his Answer how the Betty 1992 Trust came to possess that 5% share: "Defendant . . . states further that the 5% interest in the New Jersey and H Limited Partnership held by the Betty Koplar Bennett Trust Agreement dated August 2, 1989 ("Betty 1989 Trust") was assigned to the Betty 1992 Trust on July 30, 1992. (Attachment A)." See Answer at ¶ 11.

In his accompanying Counterclaim, Defendant avers that an "actual and justiciable controversy exists" as to "whether that 5% share is properly included as an asset of the Betty 1989 Trust or the Betty 1992 Trust," see id. at ¶ 14, and that Defendant is "is entitled to a judicial declaration that the Betty 1992 Trust is the true and rightful owner of the 5% share of the New Jersey and H Limited Partnership," see id. at ¶ 15. As support, Defendant alleges:

10.     On or about July 30, 1992, Betty Koplar Bennett assigned the interest in the New Jersey and H Limited Partnership to the Betty 1992 Trust. (Attachment A).

11.     On or about July 30, 1992, Betty Koplar Bennett accepted the assignment into the Betty 1992 Trust. (Attachment A).

12.     Thereafter, Richard A. Bennett, Jr., the settlor of the Betty 1989 Trust, accepted the assignment of the New Jersey and H Limited Partnership interest to the Betty 1992 Trust on behalf of the New Jersey and H Limited Partnership. (Attachment A).

Counterclaim at ¶¶ 10-12.

B.    The 1992 Assignment Attached By Defendant

The "Attachment A" that Defendant references in paragraphs 10-12 of his Counterclaim (and referred to herein as the "1992 Assignment") is a 3-page document dated July 30, 1992 titled "Assignment" on its first page, which reads: "I, BETTY KOPLAR BENNETT, hereby assign all my right, title and interest in the partnership NEW JERSEY AND H STREET LIMITED PARTNERSHIP . . . to the following Grantee:  BETTY KOPLAR BENNETT, TRUSTEE OF THE BETTY KOPLAR BENNETT TRUST U/A DATED MAY 13, 1992." See id., Attachment A thereto.  The second page is titled "Acceptance by Trustee" and is characterized by Defendant as the Betty 1992 Trust's acceptance of the assignment.  See id.  The third page is titled "Acceptance of Assignment by General Partner" and reads:  "I, RICHARD A. BENNETT, JR., as General Partner of the NEW JERSEY AND H STREET LIMITED PARTNERSHIP, accept the foregoing assignment."  See id.  Each document bears what appears to be one or more signatures, which will be presumed genuine for purposes of this motion.  No part of the 1992 Assignment makes any mention of the Betty 1989 Trust, nor are any signatures therein stated to be in any capacity relating to the Betty 1989 Trust.  See id.

C.    The Betty 1989 Trust that is Deemed Incorporated by Reference

A correct copy of that Betty 1989 Trust, from which Defendant alleges the 5% share was transferred, is attached hereto as Exhibit 1.[2]  This is the document that Defendant states "speaks for itself," see Answer at ¶¶ 12-13, and the trust which Defendant alleges initially "held" the "5% interest in the New Jersey and H Limited Partnership," see id. at ¶ 11, until it was "assigned to the Betty 1992 Trust on July 30, 1992" by virtue of the 1992 Assignment, see id. at ¶ 11.  This Betty 1989 Trust is integral to the dispute "whether the 5% share is properly included as an asset

---

[2]  Consistent with the rules of this Court, the Betty 1989 Trust has been reduced from legal size to 8.5" x 11" for filing purposes.  See Local Rule LCvR 5.1(f) & 5.4.

of the Betty 1989 Trust or the Betty 1992 Trust," see Counterclaim at ¶ 12, and to Defendants'

theory on this point that the 1992 Assignment effected the transfer of the 5% interest from the

Betty 1989 Trust to the Betty 1992 Trust.

The Betty 1989 Trust provides on its face that it was settled by Richard A. Bennett, Jr. on

August 2, 1989. See Exhibit 1 at p.1. The trust and any transfers thereunder are irrevocable, see

id. at p.2, Art. I.B ("[t]he Settlor hereby transfers the Trust Properties absolutely and

irrevocably"), and the trust cannot be modified by the Settlor. See id. The original named

Trustees are Richard A. Bennett, Jr. and his mother, Betty Koplar Bennett,[3] see id. at p.1, and the

Trustees are directed to administer the Trust Properties, as defined therein,[4] for the benefit of

Betty K. Bennett during her lifetime. See id. at p.2, Art. II.A. Specifically, during Betty K.

Bennett's life, the Trustees are directed to pay the income of the Trust to her and distribute up to

$100,000 per year of the principal "as the Settlor's mother may request or as the Trustees may

deem advisable for the support, maintenance, or health of the Settlor's mother." See id. The

Betty 1989 Trust then provides that, upon Betty K. Bennett's death, "the trust shall terminate and

all remaining principal of the trust shall be divided among the then-living descendants of the

Settlor, per stirpes," see id. at p.3, Art. II.B., and pursuant to the terms of a trust created for each

descendant under a separate August 2, 1989 trust agreement. See id. at p.3, Art. II.C.[5] Thus in

---

[3] The current trustees are LuAnn L. Bennett and Lawrence A. Miller, by reason of the death of both original trustees and pursuant to the Betty 1989 Trust's rules of succession.

[4] The initial Trust Property was $10.00, see Exhibit 1 at p.1, and the following year, in 1990, the 5% share in New Jersey and H Limited Partnership was added to the Trust Property, as reflected in the formative Agreement for that limited partnership. For simplicity's sake this latter document is not attached in view of Defendant's agreement that the 5% share was, at least as of July 30, 1992, "held" by the Betty 1989 Trust. See Answer at ¶ 11.

[5] The Settlor's descendants, totaling three, are the plaintiffs herein, along with each's respective August 2, 1989 trust established for the benefit of each by their father, Richard A. Bennett, Jr. The youngest of the three descendants, Richard A. Bennett III, is not an individual plaintiff at this time because he is not yet entitled to a partial personal distribution from the trust established for his benefit of the 5% share in dispute.

the parlance of the law of trusts, Betty K. Bennett is the life beneficiary of the Betty 1989 Trust,

and the descendants of the Settlor and/or each's respective trust – who are Plaintiffs herein, see

n.5, supra – are the remainder beneficiaries.

The Betty 1989 Trust also is subject to the "Restrictions on Anticipation" clause of

Article III.C, which provides as follows:

> No beneficiary of any trust hereunder shall have any right (other than a right to disclaim) to assign, transfer, hypothecate, or otherwise encumber his or her interest in any trust benefits or payments, and no trust assets, benefits or payments in the possession or control of the Trustees shall be subject to any levy or attachment to pay claims (including witout limitation claims for alimony or support of any spouse or former souse) against any beneficiary.

Id. at p.5, Art. III.C. (emphasis added).

The Betty 1989 Trust further provides that it "shall be governed in all respects in

accordance with the laws of the Commonwealth of Virginia." See id. at p.5, Sec. III.H.

## IV.  ARGUMENT

Defendant's Counterclaim must be dismissed because it is premised solely on the legally

faulty premise that Betty K. Bennett's 1992 Assignment operated to transfer the full 5% interest

in New Jersey and H Limited Partnership from the Betty 1989 Trust to the Betty 1992 Trust.

Assuming arguendo that the 1992 Assignment even refers to the same partnership,[6] Betty K.

Bennett was absolutely barred by the language of the Betty 1989 Trust and applicable Virginia

law[7] to assign away the Trust Property of the Betty 1989 Trust. See Part IV.A, infra.  Further,

---

[6] The 1992 Assignment upon which Defendant relies does not, on its face, assign any interest in New Jersey and H Limited Partnership.  Rather, it refers only to New Jersey and H Street Limited Partnership.  Perhaps Defendant believes the two entities are actually one and the same, but if so, Defendant does not allege as much in his Counterclaim.  Defendant also does not otherwise offer any explanation for this discrepancy, nor does he allege that the additional word "Street" was a scrivener's error or the product of mutual mistake.  Clarification also is not evident from the face of the 1992 Assignment, as the lines provided on the document for identification of the town, county and state of "New Jersey and H Street Limited Partnership" are blank.  Nonetheless, because the 1992 Assignment is ineffective in any event, Plaintiffs do not rely on this discrepancy at this time.

[7] See Exhibit 1 at p.5, Sec. III.H.

even if the 1992 Assignment could somehow be deemed valid, all she "owned" under the Betty

1989 Trust was a life interest, such that all she could have assigned in any event was that life

interest in any annual payments that could have been (but were not) made prior to her death in

May 2007.  See Part IV.B, infra.  Either way, the 1992 Assignment could not operate to transfer

the 5% interest held by the Betty 1989 Trust to the Betty 1992 Trust as alleged.

A.    The Counterclaim Must be Dismissed Because the Restraint on Voluntary Alienation of
      Beneficiary Interests in the Betty 1989 Trust Renders Ineffective the Purported 1992
      Assignment by Betty K. Bennett of the 5% Share Held by the Betty 1989 Trust.

The express terms of the Betty 1989 Trust state that a beneficiary of that trust is

forbidden from assigning his or her interest.  There is no ambiguity: "No beneficiary of any trust

hereunder shall have any right (other than a right to disclaim) to assign, transfer, hypothecate or

otherwise encumber his or her interest in any trust benefits or payments . . . ."  See Exhibit 1 at

p.5, Art. III.C.  There can be no doubt that Betty K. Bennett was indeed a "beneficiary" of the

trust, see id. at p.2, Art. II.A, and thus was subject to this restriction on anticipation, consistent

with the written intent of the trust's Settlor (her son, Richard A. Bennett, Jr.).  As a result, Betty

K. Bennett could not possibly have assigned away her interest under the Betty 1989 Trust.

This necessarily means that the 1992 Assignment, which is exclusively relied upon by

Defendant as the sole basis of his claim that the Betty 1989 Trust assigned the 5% share to the

Betty 1992 Trust, cannot possibly be valid as to the 5% share in question.  That assignment states

that Betty K. Bennett "hereby assign[s] all my right, title and interest in the partnership . . . to

[the Betty 1992 Trust]."  See Counterclaim, Attachment A thereto.  Perhaps if Betty

independently owned a 5% share in the referenced partnership, the assignment would be proper.

Here, however, it is undisputed that the 5% share was held by the Betty 1989 Trust.  See

Complaint at ¶ 11; Answer at ¶ 11.  Thus the purported assignment by a beneficiary of the Betty

1989 Trust of "Trust Property" thereunder was foreclosed by the express terms of that trust. "If

the meaning of the words is plain, there is no room for construction." Gasque v. Sitterding; 208

Va. 206, 210, 156 S.E.2d 576 (1967); Rady v. Staiars, 160 Va. 373, 376, 168 S.E. 452 (1933)

(same); First Union Nat'l Bank v. Boyette, 51 Va. Cir. 42, 43 (Fairfax County 1999) (same).

　　　Under governing Virginia law, there can be no question that this restraint on voluntary

alienation by the trust beneficiary is enforceable, as the language is contained in a statutorily-

authorized spendthrift provision. Under Virginia's Uniform Trust Code,[8] a "spendthrift

provision" is defined as a "a term of a trust that restrains both voluntary and involuntary transfer

of a beneficiary's interest." Va. Code. § 55-541.03; accord Va. Code § 55-545.02(A) ("A

spendthrift provision is valid only if it restrains both voluntary and involuntary transfer of a

beneficiary's interest."). Here, Section III.C. of the Betty 1989 Trust is just such a spendthrift

provision, as the first clause of that single sentence restrains *voluntary* transfers ("[n]o

beneficiary . . . shall have any right . . . to assign [or] transfer . . . his or her interest in any trust

benefits or payments"), and the second clause restrains *involuntary* transfers ("no trust assets,

benefits or payments . . . shall be subject to any levy or attachment to pay claims . . . against any

beneficiary." See Exhibit 1, p.5 at Art. III.C.  As a valid spendthrift provision under Va. Code

§§ 55-541.03 and 55-545.02(A), the Betty 1989 Trust is subject to Va. Code § 55-545.02(C),

which provides:

> A beneficiary may not transfer an interest in a trust in violation of a valid
> spendthrift provision and, except as otherwise provided in this article, a creditor
> or assignee of the beneficiary may not reach the interest or a distribution by the
> trustee before its receipt by the beneficiary.

---

[8]  The Uniform Trust Code was revised on April 6, 2005, effective July 1, 2006. See Va. Acts 2005 ch. 935. The
fact that the Betty 1989 Trust predates that effective date is of no moment because the revised chapter "applies to all
trusts created before, on, or after July 1, 2006" unless otherwise indicated.  See Va. Code § 55-551.06(1).

Va. Code § 55-545.02(C). This is dispositive. The Uniform Trust Code does create exceptions

for claims for child support, see Va. Code § 55-545.03(B), and claims by the government, see

Va. Code § 55-545.03(C), but otherwise is absolute in its prohibition of beneficiary transfers of

the sort reflected in the 1992 Amendment relied upon by Defendant.

This statutory blessing of settlor restraints on voluntary alienation by trust beneficiaries is

consistent with longstanding Virginia law on this subject. For example, in Alderman v. Virginia

Trust Co., 181 Va. 495, 25 S.E.2d 333, 341-43 (1943), the Virginia Supreme Court invalidated a

trust beneficiary's attempted assignment under a trust that prohibited such assignments prior to a

set age, reasoning that "[t]o come to any other conclusion would be to make a will for [testator

and settlor] Dr. Alderman, which he did not intend to make, -- a will in violation of lawful

restrictions imposed by him in the distribution of his own property." Numerous other cases have

enforced trust language of this nature. See, e.g., Jackson v. Fidelity and Deposit Co. of Md., 608

S.E.2d 901 (Va. 2005); In re Hersch, 57 B.R. 667, 668-70 (E.D. Va. Bankr. 1986); see also

former Va. Code § 55-19 (now repealed) (a spendthrift trust requires that the assets be held "in

trust upon condition that the corpus thereof and income therefrom, or either of them, shall be

applied by the trustee to the support and maintenance of the beneficiaries without being subject

to their liabilities or the alienation of them . . . ." (emphasis added). The Restatements are in

accord. See, e.g., Restatement (Third) of Trusts § 58(1), at 355 (2003) ("if the terms of a trust

provide that a beneficial interest shall not be transferable by the beneficiary or subject to the

claims of the beneficiary's creditors, the restraint on voluntary and involuntary alienation of the

interest is valid," subject to certain exceptions inapplicable here);[9] Restatement (Second) of

---

[9] The only exceptions recognized by the Third Restatement are (1) where it is *the settlor* that is seeking to rely on the alienation restraints as respects the settlor's own the beneficial interest, see Restatement (Third) of Trusts § 58(2); (2) the income beneficiary at the time of trust creation *already* held an exercisable power of appointment (i.e., an equivalence of ownership) which the trust otherwise would undo, see id. § 58(1), cmt. b(1), at 356; and (3) the

Trusts § 152(1), at 311 (1959) (subject to similar inapplicable exceptions, "the restraint on the voluntary and involuntary transfer of [the beneficiary's] right to the income accruing during his life is valid"); id. § 153(1) ("a restraint on the voluntary or involuntary transfer of [the beneficiary's future] interest in the principal is valid").

To hold otherwise would do violence to the settlor's intent and right to set the terms under which named beneficiaries receive the fruits thereof. See Jackson, 608 S.E.2d at 903-07; Herndon v. Chesapeake Nat. Bank, 33 Va. Cir. 152 (Lancaster County 1994) (noting that "[t]estamentary intent has long been a 'hallowed concept' in th[e] Commonwealth [of Virginia]," and refusing a statutory construction that would "imperil the ability of both testators and lawyers to establish trusts and plan estates with reasonable assurance that their intentions will be carried out") (citation omitted). Likewise, to permit voluntary transfers by life beneficiaries would compromise the rights of the remainder beneficiaries, and frustrate the settlor's ability to limit the degree to which the life beneficiary may erode the corpus of the trust. As repeated by the Supreme Court of Virginia, "[a]ny conveyance whether by operation by law or by act of any of the parties, which disappoints the purposes of the settlor by diverting the property or the income from the purposes named, would be a breach of the trust." Alderman, 25 S.E.2d at 340, quoting Perry on Trusts, § 386 A.; Jackson, 608 S.E.2d at 903 (quoting Alderman).

In sum, the Betty 1989 Trust's restriction on Betty K. Bennett's voluntary alienation of her trust benefits is a enforceable expression of the settlor's unambiguous and irrevocable written intent, and is explicitly authorized both by the Virginia Code and longstanding Virginia precedent. The result is that the 1992 Assignment cannot, as a matter of law, have been an effective assignment by Betty K. Bennett of the 5% share held by New Jersey and H Limited

---

creditor claim is one for child or spousal support, or for the purpose of providing necessities to protect the beneficiary's interest in the trust, see id. § 59, at 395.

Partnership. That being the only basis for the declaratory and injunctive relief sought in

Defendant's Counterclaim, the pleading does not state an actionable claim within the meaning of

Fed. R. Civ. P. 12(b)(6), and therefore must be dismissed with prejudice.

B.    The Counterclaim Must be Dismissed Because Even if the 1992 Assignment was Valid, it
      Only Operated to Assign Betty K. Bennett's Now-Terminated Right to Receive Lifetime
      Payments Under the Trust, While Leaving the 5% Share Intact.

Even if the 1992 Assignment was not rendered invalid by the Betty 1989 Trust's restraint

on alienation, Defendant's claim for relief suffers from a second insurmountable defect:  namely,

Betty K. Bennett could not have assigned the 5% share in any event, because she had no right or

title to it. Rather, at most she assigned her life interest, which is now terminated by reason of her

May 9, 2007 death. See Complaint at ¶ 14; Answer at ¶ 14.

The Betty 1989 Trust explicitly states that the "Trustees shall hold and administer the

Trust Properties," Exhibit 1 at p.2, Art. II.A., and upon Betty K. Bennett's death, "all remaining

principal of the trust" shall be divided and "distributed, outright" to the settlor's decendants. See

id. at p.3, Art. II.B. Thus the corpus of the trust is held initially by the Trustees, and later taken

outright by Richard A. Bennett, Jr.'s children and/or trusts established on their behalf. Betty K.

Bennett's right and interest in the Trust Property, however, was limited to lifetime payments, by

request or at the Trustees' discretion, of the trust's interest and up to $100,000 per year of the

principal as advisable for her support, maintenance or health. See id. at p.2, Art. II.A. The right

to receive those payments – were they made by the Trustees at all – was the most she could have

assigned (if assignments were not prohibited under the Betty 1989 Trust).[10]  Betty K. Bennett

---

[10] By contrast, presumably if lifetime distributions had already been made to Betty K. Bennett from the 1989 Trust
at the time of the 1992 Assignment, those monies could then be transferred to the Betty 1992 Trust by reason of the
assignment. See George T. Bogart, Trusts (6th ed. 1987) at § 40, at 148-49 ("[s]uch a [spendthrift] trust does not
involve any restraint on alienability or creditors' rights with respect to property after it is received by the beneficiary
from the trustee, but rather is merely a restraint with regard to his rights to future payments under the trust").  There
also is support for the proposition that an assignment of future income may be interpreted by the trustee as an order
to pay the assignee in the event such future distributions are made, even though the assignee lacks the right to

could not have assigned more than she owned. See generally Restatement (Third) of Trusts § 49 and cmt. d thereto (beneficiary's right to invade principal depends on terms of trust).

Indeed, this conclusion is fundamental to the law of trusts. A life beneficiary to a trust simply cannot assign away the trust's corpus, leaving the remainder beneficiaries with nothing, because unless the trust document indicates otherwise, the life beneficiary does not own the corpus. See Commonwealth v. Davis, 103 S.E.2d 819 (Va. 1958) (ownership requires power of appointment at death); see generally Bogart, *Trusts* § 38, at 137. To allow a life beneficiary to assign more than its life interest, and effectively transfer in wholesale fashion the entirety of the trust's assets to a third party, without any indication of consent by the remainder beneficiaries, is to turn the law of trusts on its head.

In sum, the 1992 Assignment could not have effected the transfer of the corpus of the Betty 1989 Trust – namely, the 5% interest in New Jersey and H Limited Partnership – because Betty K. Bennett never had more than a right to lifetime payments. Defendant's claim to the contrary is legally deficient, and does not support an actionable claim against Plaintiffs.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court dismiss the Counterclaim, with prejudice, for failure to state a claim upon which relief may be granted.

## VI.  REQUEST FOR HEARING

Plaintiffs respectfully request the opportunity to be heard orally on their Motion to Dismiss Counterclaim for Failure to State a Claim.

---

compel such payments. See id. ("[a]n attempted transfer of his right to future income by the beneficiary of a spendthrift trust does not give the assignee a right to compel the trustee to pay income to him, but if the assignment has not been repudiated by the beneficiary the trustee may treat it as an order to pay the assignee . . . ."); accord Restatement (Third) of Trusts § 58, cmt. d(1) at 360. However, Defendant has not alleged (correctly) that any payments were made under the Betty 1989 Trust to Betty K. Bennett, either before or after the 1992 Assignment. Moreover, even is such payments were made, they would have no bearing on Defendant's claim for the 5% share.

Dated:  October 9, 2007

Respectfully submitted,

DRINKER BIDDLE & REATH LLP


By: /s/ Brian A. Coleman
    Allen V. Farber (D.C. Bar No. 912865)
    Brian A. Coleman (D.C. Bar No. 459201)
    1500 K Street, N.W., Suite 1100
    Washington, D.C.  20005
    (202) 842-8800

*Counsel for Plaintiffs / Counterclaim Defendants*

-16-

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Court through the ECF system on the 9th of October, 2007, and that service will be made electronically by the Court's system to Robert A. Van Kirk, counsel for Defendant and Counterclaimant.

/s/  Brian A. Coleman_____

# EXHIBIT 1

<u>THE BETTY KOPLAR BENNETT TRUST</u>

<u>TRUST AGREEMENT</u>

THIS TRUST AGREEMENT is made this _2_ day of _August_ , 1989, by and between RICHARD A. BENNETT, JR. (the "Settlor"), and BETTY KOPLAR BENNETT and RICHARD A. BENNETT, JR. (collectively, the "Trustees").

W I T N E S S E T H:

WHEREAS, the Settlor wishes to establish a trust, which trust the Settlor expects will receive gifts from time to time; and

WHEREAS, the Settlor wishes to transfer certain property into such trust.

NOW, THEREFORE, in consideration of the foregoing, the Settlor hereby irrevocably transfers and assigns to and vests in the Trustees, effective as of the date of this Trust Agreement, the sum of _____ _Ten_ Dollars ($_10.00_) (which, together with (i) all additions and accretions thereto, including additional transfers in trust hereinafter made, (ii) the proceeds of all sales and exchanges thereof, and (iii) all reinvestments thereof, is hereinafter sometimes referred to as the "Trust Properties");

TO HAVE AND TO HOLD unto the Trustees, IN TRUST, upon the following uses and trusts:

<u>ARTICLE I:  ADDITIONS, AMENDMENT AND REVOCATION</u>

A.  <u>Additions to Trust Properties</u>.  The Settlor reserves the right to add real and personal property to the Trust Properties at any time by gift, bequest, devise, or any other means of transfer or assignment.  The Trustees are authorized to accept any addition of real and personal property to the Trust Properties (whether or not subject to any lien, liability or encumbrance) by gift, bequest, devise, or

any other means of transfer or assignment from the Settlor,
and/or from any other person or entity.  If the Trustees so
receive and accept additional property for the trust created
hereunder, the Trustees shall take all steps necessary or
appropriate to enter such property on the books and records
of the trust.

      B.  <u>No Right to Amend or Revoke</u>.  The Settlor
hereby transfers the Trust Properties absolutely and irrevo-
cably, for the uses and purposes and upon the terms and
conditions stated herein.  The Settlor expressly waives,
renounces and releases forever any and all right, power and
authority, whether alone, jointly or in conjunction with
others, and regardless of when or from what sources he may
heretofore or hereafter have acquired such right, power or
authority, to change, modify, alter, amend, revoke or termi-
nate this Trust Agreement, or any term or condition hereof,
in whole or in part.

ARTICLE II:   TRUST ADMINISTRATION

      A.  <u>During Mother's Life</u>.  The Trustees shall hold
and administer the Trust Properties, collect the income
therefrom, and, after deducting all proper charges and ex-
penses, shall pay, from time to time, so much (even to the
extent of all) of the net income of the trust to or for the
benefit of the Settlor's mother, BETTY KOPLAR BENNETT, as she
may request or as the Trustees may deem advisable for her
benefit for any reason.  In addition, the Trustees shall
distribute from time to time so much of the principal of the
trust, but in no event in excess of One Hundred Thousand
Dollars ($100,000) per year (which shall be non-cumulative),
as the Settlor's mother may request or as the Trustees may
deem advisable for the support, maintenance, or health of the
Settlor's mother.  It is the intention of the Settlor that
these standards be broadly interpreted for the benefit of his
mother.  The right of the Settlor's mother to request distri-

- 2 -

butions shall be personal to her and thus may not be exer-
cised by any attorney in fact or other representative of the
Settlor's mother.

      B.  <u>Termination on Mother's Death</u>.  Upon the death
of the Settlor's mother, the trust shall terminate and all
remaining principal of the trust shall be divided among the
then-living descendants of the Settlor, per stirpes.  Each
such share shall be distributed, outright, subject to the
provisions of paragraph II C.  If none of the descendants of
the Settlor are then living, all remaining principal of the
trust shall instead be distributed to the charitable founda-
tion known as "THE RICHARD A. BENNETT, JR. FOUNDATION" estab-
lished under paragraph F of Article III of the Settlor's
Trust Agreement dated August 2, 1989 (or which may alterna-
tively have been established under the terms of the Settlor's
Will).  If said charitable foundation is not then in exis-
tence, then the provisions of said Trust Agreement are hereby
incorporated into this Agreement, thus creating and funding
such foundation hereunder, with terms identical to those in
said Trust Agreement (provided that the Trustees named herein
shall be deemed to have been appointed as the initial Trust-
ees of said charitable foundation).

      C.  <u>Distribution to Descendants of Settlor</u>.  Each
share of the remaining trust principal which is distributable
to a descendant of the Settlor pursuant to paragraph II B who
is then under the age of thirty-eight (38) years shall be
distributed to the Trustees, IN TRUST, of the trust created
by the Settlor for such descendant under Agreement dated
August 2, 1989 to be held and administered as part of that
trust.  If no such trust is then in existence for the benefit
of such descendant, such descendant's share shall instead be
distributed to the Trustees, IN TRUST, of the similar trust
for such descendant established and funded under Settlor's
Will; or, if no such trust is then in existence for the

benefit of such descendant, such descendant's share shall
instead be distributed to the Trustees hereunder, IN TRUST,
to be held and administered as a separate trust for the
benefit of such descendant in accordance with the provisions
of the Trust Agreement executed by the Settlor on August 2,
1989, which Agreement is in that event specifically incorpo-
rated herein, thus establishing a trust of identical terms
for the benefit of such descendant (provided, however, that
the Trustees named herein shall be deemed to have been ap-
pointed as the initial Trustees of said trust).  Notwith-
standing the above, if such descendant has then reached the
age of twenty-four (24) years, then the following percentage
(depending upon such descendant's age at that time) of each
such share shall be distributed, outright, to such descendant
prior to the distribution of the remainder of each such share
to the Trustees of such descendant's trust (that is, either
the trust described above or the trust of identical terms
created pursuant to this paragraph):

> Ten percent (10%) if such descendant is then at
> least 24, but under 27, years of age;
>
> Twenty-eight percent (28%) if such descendant is
> then at least 27, but under 30, years of age;
>
> Forty-six percent (46%) if such descendant is then
> at least 30, but under 34, years of age; or
>
> Seventy-three percent (73%) if such descendant is
> then at least 34, but under 38, years of age.


## ARTICLE III:  GENERAL PROVISIONS

A.  _Additions to Existing Trusts_.  Notwithstanding
any contrary provision of this Trust Agreement, upon the
termination of any trust hereunder, any principal and undis-
tributed income which is payable to an individual who is the
beneficiary of another trust hereunder shall instead be
distributed to, and added to the principal of, the existing
trust for such beneficiary.

B.  _Limitation on Duration_.  Notwithstanding any
contrary provision of this Trust, each trust hereunder shall
terminate (if not earlier terminated) twenty (20) years after
the death of the last to survive of the Settlor's wife, the
Settlor's mother, the Settlor's children and the descendants
of the Settlor's children living at the time of the Settlor's
execution of this Trust Agreement.  Upon such termination, my
Trustees shall distribute any remaining principal and undis-

tributed income, outright, to the beneficiary or beneficia-
ries then entitled or permitted to receive income distribu-
tions.  Such principal and undistributed income shall be
divided among such beneficiaries in the proportions in which
they are then entitled to receive income distributions, or,
if no such proportions are specified or required under the
terms of the trust, then per stirpes.

      C.  <u>Restrictions on Anticipation</u>.  No beneficiary
of any trust hereunder shall have any right (other than a
right to disclaim) to assign, transfer, hypothecate, or
otherwise encumber his or her interest in any trust benefits
or payments, and no trust assets, benefits or payments in the
possession or control of the Trustees shall be subject to any
levy or attachment to pay claims (including without limita-
tion claims for alimony or support of any spouse or former
spouse) against any beneficiary.

      D.  <u>Court Jurisdiction</u>.  It is the Settlor's desire
that no trust created hereunder shall be administered under
the supervision or jurisdiction of any court.  If at any time
or from time to time it becomes necessary or advisable to
submit a matter or issue affecting any trust hereunder to a
court, the court shall acquire jurisdiction over the trust
only for that purpose and only until the conclusion or set-
tlement of the matter or issue presented to it.

      E.  <u>Accounts</u>.  Statements of account, which detail
the assets of the trust and the income and principal transac-
tions during the accounting period, shall be rendered by the
Trustees, at least as often as semiannually, to the benefi-
ciaries (or their natural or legal guardians, conservators or
committees, if any) who are then entitled (or permitted) to
receive income distributions from the trust.  The usual
statements of a corporate trustee, rendered at least semian-
nually, shall satisfy this requirement.

      F.  <u>Manner of Distribution</u>.  Any distribution or
payment to be made under any trust created hereunder to or
for the benefit of a person who is a minor or who is under
any other legal disability may be made to such person's
court-appointed guardian, conservator or committee, or may be
made, without the need for the judicial appointment of a
guardian (or conservator or committee):  (i) to a parent, or
any legal or natural guardian or other person then caring for
or having custody of such person; (ii) directly to the minor;
(iii) to a Custodian for the minor under the Uniform Gifts
(or Transfers) To Minors Act of any jurisdiction; or (iv) in
such other manner as the Trustees, in their discretion, deem
to be in the person's best interests.

      G.  <u>Survivorship Presumption</u>.  For the purposes of
this Trust Agreement, if any person entitled to any property
interest passing hereunder as a survivor of the Settlor or
another person does not survive the Settlor or such other
person for sixty (60) days or longer, he or she shall be
deemed to have predeceased the Settlor or such other person.

      H.  <u>Governing Law</u>.  This Trust shall be governed in
all respects in accordance with the laws of the Commonwealth
of Virginia.

ARTICLE IV:  POWERS OF TRUSTEES

      In addition to, and not in limitation of, the
rights, powers, privileges and discretions vested in trustees
by law, the Trustees (including any successor) shall have all

of the powers set forth in Section 64.1-57 of the Code of
Virginia at the time of the Settlor's execution of this Trust
Agreement, as well as the following powers and authority in
the management of any trusts created hereunder and with
respect to any property, real and personal (to be exercised,
without application to any court, in such manner and upon
such terms as the Trustees shall, in their discretion, deem
advisable):

A.  _Investments_.  To retain (without liability or
responsibility for any loss or damage which may result from
such retention), invest, and reinvest property, without being
limited to property authorized by law for the investment of
trust funds and (except as otherwise provided below) without
regard to diversification of assets, and even though such
assets are not income-producing.  The Settlor directs, howev-
er, that after he is no longer one of the Trustees, the
Trustees refrain from investing in common stocks, and, in
addition, that at least fifty percent (50%) of the value of
the assets of each trust created hereunder be invested,
within a reasonable time (but in all events within three
years after the Settlor ceases to be one of the Trustees), in
debt instruments consisting of either U. S. Government obli-
gations or corporate bonds which are rated at least "AA" or
the equivalent, or such other investments or financial vehi-
cles then available which would, in the judgment of the
Trustees, provide a level of security and emphasis on the
protection of principal which is substantially equivalent to
that historically (at least as of the date of the execution
of this Trust Agreement) provided by such debt instruments.
In complying with this fifty percent requirement, however,
the Trustees shall not be required to periodically revalue
and reinvest the trust assets once the fifty percent objec-
tive has been reached; rather, this requirement shall be
construed to require that the Trustees thereafter select each
new or additional investment so as to conform to these in-
vestment standards.

B.  _Sales_.  (i) To sell (without regard to any
statutory preference for distribution in kind) with or with-
out notice, at public or private sale, for cash or on credit,
with or without security, (ii) to exchange and (iii) to grant
options to purchase, any property.

C.  _Loans and Encumbrances_.  (i) To borrow money,
(ii) to mortgage, pledge as security, or otherwise encumber
any property, (iii) to pay the prevailing rate of interest on
any loan from any of the Trustees, and (iv) to make loans
(without regard to the duration of any trust hereunder) which
shall be interest bearing and reasonably secured.

D.  _Property_.  To lease (as landlord or tenant) for
any period (without regard to the duration of any trust
hereunder or to any statutory restriction), exchange, parti-
tion, subdivide, alter, demolish, develop, dedicate (even
without consideration), improve, repair, maintain, grant
easements on or otherwise deal with property.

E.  _Contracts; Collections_.  (i) To make contracts,
(ii) to compromise, settle, release, arbitrate or accept
arbitration of any debts or claims in favor of or against any
trust hereunder, (iii) to sue on behalf of, and defend any
suit against, any trust hereunder, (iv) to foreclose any
mortgage, deed of trust or other lien and to bid on the
property at foreclosure sale or acquire the property by deed
without foreclosure, and (v) to extend, modify or waive the
terms of leases, bonds, mortgages and other obligations or
liens.

F. <u>Title to Property</u>. To hold any property in the name of a nominee, and to keep securities unregistered.

G. <u>Stock Powers</u>. To execute on behalf of the Settlor any and all stock powers and other documentation necessary to evidence any transfer and assignment of any real and personal property to this Trust, including without limitation the initial transfer by the Settlor hereunder.

H. <u>Combination of Trust Funds</u>. To hold, <u>in solido</u>, property constituting principal of two or more trusts hereunder, and to make joint or common investments in which the separate trusts shall have undivided interests.

I. <u>Capital Arrangements</u>. (i) To perform and renegotiate the provisions of any business agreements (including, without limitation, royalty, copyright, license and lease agreements), and (ii) to liquidate, reorganize or continue to operate any business (without regard to the form of the business or to any time limitation imposed by any statute) without having to file any financial statements or other periodic accounts of the business in any court, and without regard to any personal interest of, or compensation earned and payable at any time to, any of the Trustees in or from such business.

J. <u>Benefits Payable</u>. To receive any proceeds made payable to a trust hereunder, and to hold, manage and distribute such property in accordance with the provisions of such trust. Notwithstanding any contrary statutory provisions, all such proceeds shall constitute principal of the trust (regardless of whether such proceeds are received in a lump sum or in installment or annuity payments), except to the extent such proceeds constitute interest or other income earned thereon after the date of the Settlor's death. The Trustees shall allocate each installment or annuity payment first to income (as determined above) to the full extent of such income earned through the end of the period represented by such payment, and then to principal. Subject to the above, the Trustees shall allocate reasonably to trust income a portion of any asset received by the Trustees after a period of deferral or delay.

K. <u>Allocation Between Principal and Income</u>. To reasonably allocate (subject to paragraph IV J) all receipts and disbursements between principal and income as the Trustees, in their discretion, may deem proper, including, by way of illustration and not by way of limitation, the allocation of capital gains, stock dividends, sinking funds, reserves (including reserves for depreciation and contingencies), premiums paid or discounts obtained in making investments, and damages, costs, fees, and expenses of administration or litigation.

L. <u>Agents</u>. To employ agents, attorneys, accountants, appraisers, brokers, counsel, including investment counsel, and others, whether individual or corporate, and to pay their reasonable compensation and expenses and rely on their opinion and advice. Any of the Trustees may serve and be compensated in any such additional capacity.

M. <u>Dealings with Estates</u>. To purchase assets for fair market value from the estate of the Settlor and/or the estate of the Settlor's wife and to lend money at a fair interest rate and with reasonable security to the estate of the Settlor and/or the estate of the Settlor's wife.

N. **Any and All Acts**. Generally to do anything, including without limitation the execution of all documents, with respect to any property, real or personal, which the Trustees could do if they owned such property absolutely.

The provisions of this Article shall continue in effect until every trust created hereunder is terminated and the trust properties distributed.

## ARTICLE V:   TRUSTEES

A. **"Trustees"**. Any reference in this Trust Agreement to "Trustees" shall be deemed to include not only the original Trustees but also any successor or ancillary Trustee hereunder, and all rights, powers, privileges and discretions vested in the original Trustees (subject to paragraph V D) shall be deemed to be vested in any successor or ancillary Trustee.

B. **Additional and Successor Trustee**. If any trust is created hereunder for a child of the Settlor, that child is appointed, upon his twenty-first (21st) birthday, as a Co-Trustee (but with no power or authority over the distribution of principal) of such trust, to serve with the other Trust-ees. Upon the death or resignation of any Trustee of this Trust or any trust created hereunder, or on the thirtieth (30th) day following receipt by the Trustees (or by a majori-ty of those who are then entitled to receive income from the trust) of a written declaration by a medical doctor that a Trustee (other than the Settlor's mother) is not able to manage his own affairs (unless said declaration is contra-dicted by the written declaration of another medical doctor which is so received during that 30-day period), LUANN L. BENNETT, PHILLIP L. MANN and LAWRENCE A. MILLER, in the order named, are hereby named as Co-Trustee of all trusts created hereunder in place of such (former) Trustee. In addition, neither RICHARD A. BENNETT, JR. nor LUANN L. BENNETT shall have any power as Trustee after the death of the Settlor's mother over the distribution of principal or income of the trust, other than the power to effect a total (terminating) distribution upon and as a result of the death of the Set-tlor's mother to beneficiaries (including the Trustees of another trust pursuant to the terms hereof). The last person serving as Trustee shall appoint other individuals (other than the beneficiary, the Settlor or the Settlor's spouse) or a bank or similar corporation with trust powers then having a combined shareholders' equity of at least One Hundred Million Dollars to serve as Co-Trustees hereunder. If at any time there is no Trustee serving, one trustee (whether an individ-ual or a corporation, as provided above) of each trust may be appointed by the beneficiary of that trust (and each minor or incompetent beneficiary shall be represented in this selec-tion by his or her natural or legal guardians, conservators or committees). It is the Settlor's intention that there be, at all times, at least two (2) Trustees of each trust hereun-der who are neither the Settlor nor the Settlor's wife.

C. **Right to Resign**. Any of the Co-Trustees, other than a sole remaining Trustee, may resign at any time upon giving the Co-Trustees thirty (30) days' advance written notice. Any sole Trustee may resign by giving such written notice to the income beneficiaries of the trust hereunder only after properly attending to the valid appointment of one or more successors.

D. **Ancillary Trustee**. If a resident of any par-ticular jurisdiction must serve as a Trustee and if no such

resident is appointed herein, the Trustees (or the person designated as such herein) shall appoint (and may replace at any time) the necessary Co-Trustee. An ancillary Co-Trustee shall act only with respect to those matters and property which necessitated such appointment, and shall not participate in any decision regarding distributions of income or principal.

E. <u>No Bond Required</u>. No bond, surety or other security (including any bond in connection with the sale of real property) shall be required of any individual serving as a Trustee (including any ancillary Co-Trustee). The Trustees shall have no duty to render annual or other periodic accounts to any court.

F. <u>Liability of the Trustees</u>. Except for willful default or gross negligence, no individual serving as Trustee shall be liable for any act, omission, loss, damage or expense arising from the performance of his or her duties under any trust hereunder. No Trustee shall be liable or responsible for any acts or omissions of any predecessor Trustee or for any losses or expenses resulting therefrom, or shall be required to inquire into, any act or decision of or pursue any claim or remedy against any predecessor Trustee. Any successor Trustee shall be entitled to accept as conclusive any accounting and statement of assets furnished by the predecessor Trustee (or by such predecessor's personal representative or successor in interest), and shall be entitled to acknowledge receipt of only those assets included in such statement.

G. <u>Authority to Act</u>. Subject to paragraph V D, whenever there are more than two (2) Trustees hereunder, the Trustees shall act by majority decision, and whenever any Trustee is absent or unavailable after receiving reasonable notice, the other Trustees may act without such absent or unavailable Trustee. Any person dealing with the Trustees may at any time rely on a certificate by one or more of them that he or they have sole authority to act because of the absence or unavailability of the other Trustee(s), and such certificate shall be binding on such trust to make fully valid the action with the person relying on such certificate. No person dealing with the Trustees shall be required to see to the application of any property paid or delivered to the Trustees, or to inquire into the expediency or propriety of any transaction or the authority of the Trustees to enter into or consummate the same upon such terms as the Trustees may deem advisable.

H. <u>Compensation of Trustees</u>. Any trust hereunder may pay to the Trustees (or any of them) reasonable compensation for services actually performed. Specifically, while Phillip L. Mann or Lawrence A. Miller are serving as a Trustee hereunder, they as well as other members and employees of their respective law firms shall be paid their usual hourly rates charged for the services rendered to any trust created hereunder. Notwithstanding the foregoing, the compensation paid to any corporate institution shall be determined pursuant to its published fee schedule in effect when such services are rendered. Any compensation paid in accordance with this provision shall be conclusively deemed to be reasonable without the need for judicial approval, and the Trustees shall not be liable to any person or entity who may be interested in any trust hereunder as a result of such payment.

## ARTICLE VI:  DEFINITIONS

A.  "Child" and "Descendants".  For purposes of this Trust Agreement, (i) the terms "child" or "children" shall mean a lawful descendant or descendants in the first degree, whether by blood or by adoption during minority (and whether born or adopted before or after the execution of this Trust Agreement), of the parent designated, and (ii) the term "descendant" shall mean a lawful descendant or descendants in any degree, whether by blood or by adoption during minority (and whether born or adopted before or after the execution of this Trust Agreement), of the ancestor designated.  Notwithstanding the foregoing, for purposes of this Trust Agreement, any child born to or adopted during minority by persons holding themselves out as husband and wife after the performance of a marriage ceremony between them shall be considered as a lawful descendant in the first degree of such persons, and therefore a "child" (as defined in the preceding sentence) of such persons, even though any divorce or annulment proceeding purporting to terminate a prior marriage of either is or may be invalid; and a blood descendant in the first degree of a person shall be deemed to be a lawful descendant in the first degree of such person, and therefore a "child" (as defined in the preceding sentence) of such person, if it is established that such person has openly and continuously held out such descendant as his or her son or daughter.

B.  Infant in Gestation.  For purposes of this Trust Agreement, an infant in gestation who is later born alive and survives for a period of at least sixty (60) days shall be deemed to have been in being during such period of gestation and to have survived for sixty (60) days for purposes of qualifying such infant, after its birth, both as a life in being and as a beneficiary of the trusts hereunder.

C.  "Heirs".  For purposes of this Trust Agreement, "heirs" of any person shall mean those individuals who would take such person's personal property under the laws of the jurisdiction of the Settlor's domicile at the time the Settlor executed this Trust Agreement, if such person had died at the time stipulated for distribution, being unmarried, intestate, owning the property available for distribution, without creditors and domiciled in such jurisdiction.

D.  "Education".  For purposes of this Trust Agreement, unless otherwise provided, "education" shall include without limitation education at public and private grammar schools and high schools, colleges and graduate schools, technical and trade schools, art, photography, drama and other schools involved with creative arts and skills and language schools, and payments for education shall include without limitation payments for tuition, room and board, books, clothing, tutoring, and transportation for any of the foregoing, reasonable amounts for entertainment and other living or incidental expenses while enrolled in any above-described program, and other activities (including travel) which, in the discretion of the Trustees, are deemed to be educational.  Nevertheless, nothing herein shall be deemed to compel the Trustees to continue to pay the costs of an educational program as long as, in the Trustees' sole discretion, the beneficiary demonstrates either no aptitude for that particular program or no reasonable commitment or effort to benefit from the program.

E.  "Code".  The "Code" shall mean the Internal Revenue Code of 1986, as amended and as it may hereafter be amended, and all references to a particular section of the Code shall refer to any corresponding provision of federal

tax law in effect at the time to which such reference applies.

F. <u>Gender and Number</u>. The use of any gender herein shall be deemed to be and include the other genders, and the use of the singular herein shall be deemed to be and include the plural (and vice versa), wherever appropriate.

G. <u>Headings</u>. The headings employed in this Trust Agreement are solely for convenience and shall not limit or affect any term or provision, or the construction thereof.

IN WITNESS WHEREOF, the Settlor has set his hand and seal, and the Trustees have caused their names to be hereunto subscribed and their seals affixed hereto as of the day and year first hereinabove written.

_Richard A. Bennett_ (SEAL)
RICHARD A. BENNETT, JR., Settlor

_Richard A. Bennett_ (SEAL)
RICHARD A. BENNETT, JR., Trustee

_Betty Koplar Bennett_ (SEAL)
BETTY KOPLAR BENNETT, Trustee

THE DISTRICT OF COLUMBIA)  ss:

I, _Charemon L. Strobel_, a Notary Public in and for the aforesaid jurisdiction, do hereby certify that RICHARD A. BENNETT, JR., to me personally known or identified to me as the Settlor and a Trustee in the foregoing and annexed Trust Agreement, personally appeared before me in said jurisdiction and acknowledged to me that he executed the said Trust Agreement as his free act and deed, for the purposes therein contained.

Given under my hand and seal this _2nd_ day of _August_, 1989.

_Charemon L. Strobel_
Notary Public

My Commission Expires June 14, 1993

STATE OF          )
                  )  ss:
COUNTY OF         )

I, _ELMER J. GIDLOW_, a Notary Public in and for the aforesaid jurisdiction, do hereby certify that BETTY KOPLAR BENNETT, to me personally known or identified to me as a Trustee in the foregoing and annexed Trust Agreement, personally appeared before me in said jurisdiction and ac-

- 11 -

knowledged to me that she executed the said Trust Agreement
as her free act and deed, for the purposes therein contained.

Given under my hand and seal this _16th_ day of
_August_ , 1989.

_Elmer J. Gidlow_
Notary Public

ELMER J. GIDLOW
NOTARY PUBLIC STATE OF MISSOURI
ST. LOUIS COUNTY
MY COMMISSION EXP. SEPT. 1, 1992

- 12 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **THE KEVIN S. BENNETT TRUST U/A** | ) | |
| **DATED AUGUST 2, 1989, et al.,** | ) | |
| | ) | |
| **Plaintiffs / Counterclaim Defendants,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Civ. No. 1:07-cv-01519 (CKK)** |
| | ) | |
| **ROBERT S. BENNETT, as Trustee for the** | ) | |
| **BETTY KOPLAR BENNETT TRUST** | ) | |
| **AGREEMENT DATED MAY 13, 1992,** | ) | |
| | ) | |
| **Defendant / Counterclaimant.** | ) | |

## <u>ORDER</u>

UPON CONSIDERATION of the Plaintiffs' and Counterclaim Defendants' Motion to

Dismiss Counterclaim for Failure to State a Claim and supporting Memorandum, any opposition

thereto, and any reply in support thereof, it is, this _____ day of _____,

2007,

ORDERED that said Motion be and hereby is GRANTED, and it is further

ORDERED that Defendant's Counterclaim be and hereby is DISMISSED WITH

PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE

**COPIES TO BE SENT TO:**

Robert A. Van Kirk
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005

Allen V. Farber
Brian A. Coleman
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W., Suite 1100
Washington, D.C.  20005