IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE KEVIN S. BENNETT TRUST U/A<br>DATED AUGUST 2, 1989, et al.,<br><br>    Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>ROBERT S. BENNETT, as Trustee for the<br>BETTY KOPLAR BENNETT TRUST<br>AGREEMENT DATED MAY 13, 1992,<br><br>    Defendant / Counterclaim Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civ. No. l:07-cv-01519 (CKK)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM**

Defendant/Counterclaim Plaintiff Robert S. Bennett ("Defendant"), as Trustee for the Betty Koplar Bennett Trust Agreement Dated May 13, 1992, as amended (the "Betty 1992 Trust"), by and through counsel, hereby submits this memorandum in opposition to Plaintiffs' Motion to Dismiss Counterclaim for Failure to State a Claim ("Motion" or "Mot.").

**INTRODUCTION**

Plaintiffs' Motion rests on the mistaken belief that Betty Koplar Bennett was "only a life beneficiary" of the Betty Koplar Bennett Trust Agreement Dated August 2, 1989 (the "Betty 1989 Trust," attached hereto as Exhibit 1) who "did not own the 5% share." *See* Mot. at 3. On the contrary, Betty also was a Trustee, with legal ownership over the trust's assets and broad powers to distribute Trust principal to herself or other entities she controlled, so long as she had the approval of her co-Trustee, Richard A. Bennett, Jr. ("the Settlor"), and the amount did not exceed $100,000. And even as beneficiary, Betty had an express withdrawal right over the

1

principal of the Betty 1989 Trust, subject to an annual cap of $100,000.  On July 30, 1992, she exercised these legitimate powers under the Trust Agreement to assign the Betty 1989 Trust's interest in the New Jersey and H Limited Partnership (the "Partnership") to the Betty 1992 Trust.  The assignment was accepted by (1) the Betty 1992 Trust, (2) the co-Trustee of the Betty 1989 Trust, and (3) the Partnership itself, through its general partner.  Plaintiffs' protestations notwithstanding, the Betty 1989 Trust thus relinquished all rights to its interest in the Partnership fifteen years ago, and the successors to the Betty 1989 Trust, who were put on constructive notice of the assignment at the time, cannot now undo the transaction.

  Plaintiffs' misconception of Betty's status with respect to the Betty 1989 Trust afflicts each of its arguments.  First, Plaintiffs argue that the "spendthrift provision" in the Betty 1989 Trust prevented the 1992 assignment.  But the spendthrift provision had no effect on either the Trustees' power to distribute principal or the beneficiary's express withdrawal right over the principal.  Rather, spendthrift provisions operate solely to prevent a beneficiary from selling or assigning her *pre-distribution interest in the trust* to creditors.  Here, the assignment *was* the distribution to the beneficiary, and the spendthrift provision does not apply.

  Second, Plaintiffs argue that if the assignment papers were enforceable, they effectively only transferred a life interest to the Betty 1992 Trust.  *See* Mot. at 3.  This argument misses the fact that the Trust, through the Trustees, assigned the trust assets.  Indeed, the papers specifically assigned the interest in the *Partnership*, which was owned by the Trust; Betty's life interest, on the other hand, was not in the Partnership but in the Betty 1989 Trust.  To interpret the assignment as Plaintiffs allege therefore would be absurd; on the contrary, the only way to effect the intent of Betty and the Settlor is to find that they signed the assignment papers in their capacities as Trustees.

Plaintiffs' arguments suffer on another score, as well: In accepting the assignment on behalf of the Partnership, the general partner put the remaining limited partners—which likely included Plaintiff Trusts, as well as Trustee LuAnn Bennett in her individual capacity—on constructive notice that the assignment had occurred. Again, because the assignment papers transferred an interest in the Partnership rather than the Trust, the limited partners could not reasonably have believed that Betty and the Settlor meant merely to assign Betty's life interest as a beneficiary. Any claims therefore accrued in 1992, and Plaintiffs' right to challenge the assignment is now barred by the statute of limitations and laches.

In sum, the key to interpreting a testamentary or inter vivos trust is to ascertain the testator's or settlor's intent from the words he or she chose.[1] In this case, the Settlor's inescapably clear intent was fully satisfied by his mother's withdrawal of the 5% share in the Partnership from the Trust. To conclude otherwise is to take away a withdrawal right that the Settlor expressly gave his mother for the purpose of protecting her financially and to deny that the Settlor and co-Trustee consented to his mother's exercise of that right.

## FACTUAL BACKGROUND

**A. The Betty 1989 Trust and its Interest in the New Jersey and H Limited Partnership.**

The Betty 1989 Trust was established by Richard A. Bennett, Jr. (the "Settlor") on or about August 2, 1989. Compl. ¶ 10. The named Trustees were the Settlor and his mother, Betty Koplar Bennett. Pl. Ex. 1. Betty was also named as the beneficiary of the Trust, and the

---

[1] In construing a trust under a will, Virginia courts have held that "the primary duty of the court is to ascertain the intention of a testator from the whole of his will, and the words used by him" and "the object is to ascertain and determine what the testator meant by what he said in the will." *Gasque v. Sitterding*, 156 S.E.2d 576, 580 (Va. 1967); *see also Rady v. Staiars*, 168 S.E. 452, 452–53 (Va. 1933) (interpreting will); *First Union Nat'l Bank v. Boyette*, 51 Va. Cir. 42, 43 (Va. Cir. Ct. 1999) (interpreting trust under a will).

Trustees were directed to hold and administer the Trust Properties for Betty's lifetime benefit, subject to the terms and limitations set forth therein. The remainder beneficiaries of the Trust are the Settlor's descendants and/or trusts for their benefit. Pl. Ex. 1 Art. II.B.

As both Trustee and lifetime beneficiary, Betty was given almost unlimited access to both the principal and income of the Betty 1989 Trust. With regard to the Trustees' obligations to make distributions of net income for Betty's benefit, the Trust Agreement provides:

> The Trustees shall hold and administer the Trust Properties, collect the income therefrom, and, after deducting all proper charges and expenses, shall pay, from time to time, so much (even to the extent of all) of the net income of the trust to or for the benefit of the Settlor's mother, BETTY KOPLAR BENNETT, as she may request or as the Trustees may deem advisable for her benefit for any reason.

*Id.* Art. II.A. The Trustees also were obligated to make distributions of principal for Betty's benefit:

> In addition, the Trustees shall distribute from time to time so much of the principal of the trust, but in no event in excess of One Hundred Thousand Dollars ($100,000) per year (which shall be non-cumulative), as the Settlor's mother may request or as the Trustees may deem advisable for the support, maintenance, or health of the Settlor's mother.

*Id.* The Trust Agreement further provided that "these standards [should] be broadly interpreted for the benefit of his mother" and that "[t]he right of the Settlor's mother to request distributions shall be personal to her and thus may not be exercised by any attorney in fact or other representative of the Settlor's mother." *Id.*

In accordance with standard trust practice and as further protection of Betty as the Trust's beneficiary, the Trust Agreement contains a "Restrictions on Anticipation" clause (the "Spendthrift Clause"), which provides as follows:

> No beneficiary of any trust hereunder shall have any right (other than a right to disclaim) to assign, transfer, hypothecate, or otherwise encumber his or her interest in any trust benefits or payments, and

4

> no trust assets, benefits or payments in the possession or control of the Trustees shall be subject to any levy or attachment to pay claims (including without limitation claims for alimony or support of any spouse or former souse) against any beneficiary.

*Id.* Art. III.C.  Accordingly, neither Betty nor her co-Trustee could assign Betty's *pre-distribution interest* in the Betty 1989 Trust to a third party creditor.  There is no limitation, nor could there be, on Betty's ability to assign her *personal property* to a third-party, including any income or principal she already had received as distributions from the Betty 1989 Trust.  Similarly, the Trust Agreement contains no limitation, save for the annual $100,000 cap, on the Trustees' authority to distribute income and principal, up to and including the entire principal amount, to Betty herself and other entities she controls.

In or about 1990, the Settlor caused to be added to the Trust Properties of the Betty 1989 Trust a 5% limited partner interest in the Partnership.  Compl. ¶ 11.  The Partnership was organized in the District of Columbia.  *Id.*[2]

### B.  The 1992 Assignment and the Current Dispute.

On July 30, 1992, Betty executed a written assignment of the Trust's interest in the Partnership to the Betty 1992 Trust.  *See* Answer & Countercl. Att. A.  On the same day, Betty executed an acceptance document entitled "Acceptance by Trustee," accepting the transfer of all rights and title to the Partnership into the Betty 1992 Trust.  *Id.* Att. B.  Richard A. Bennett, Jr., the Settlor and Trustee of the Betty 1989 Trust, then also executed a document accepting the assignment, noting his capacity as general partner of the Partnership.  *Id.* Att. C.  Plaintiffs do not contest the legitimacy of these signatures for purposes of their Motion.  Mot. at 7.  By information

---

[2] The Betty 1989 Trust Agreement provides that it "shall be governed in all respects in accordance with the laws of the Commonwealth of Virginia."  Pl. Ex. 1 Art. III.H.  Accordingly, Defendant assumes for purposes of this Memorandum that Virginia law applies to the interpretation of the Trust Agreement, while District of Columbia law applies to questions concerning the Partnership.

and belief, Plaintiff Trusts and Trustee LuAnn Bennett were limited partners in the Partnership at the time these documents were executed. *See* Ex. A; *infra* note 7.

Betty Koplar Bennett died on May 31, 2007. Compl. ¶ 14. Defendant, a resident and domiciliary of the State of Florida, is the sole trustee of the Betty 1992 Trust. *See* Answer at 3. While a vote was recently pending on a proposal before the Partnership, Defendant attempted by letter dated June 19, 2007 to vote the 5% share on behalf of the Betty 1992 Trust. Compl. ¶ 16. Plaintiffs thereafter brought a Complaint for Declaratory and Injunctive Relief claiming that they are the rightful owners of the 5% share. Defendant has counterclaimed, noting the 1992 assignment and its acceptance by the Trustees and Settlor of the Betty 1989 Trust, as well as by the general partner of the Partnership.

## ARGUMENT

### I. The Spendthrift Clause Has No Application to the 1992 Assignment.

Plaintiffs first argue, in the name of "settlor's intent," that the Spendthrift Clause in the Betty 1989 Trust prevents the Settlor's mother from assigning the principal of the Trust, even though the Settlor expressly gave her the power to do so. Plaintiffs would have the court believe that the Settlor specifically provided in Article II of the Trust Agreement that his mother would have a withdrawal right of up to $100,000 per year in principal and then took it away in Article III. Plaintiffs misrepresent the purpose and scope of the Spendthrift Clause.

As an initial matter, spendthrift provisions do not restrict Trustees from making distributions that are authorized in the trust instrument, and they do not restrict beneficiaries from exercising withdrawal rights over trust assets. "The sole object of these [spendthrift] trusts is to prevent *anticipation* of trust income or principal by *assignments of the right to receive future income or principal* or from attempts by creditors of the beneficiary to reach such right." Bogert on Trusts § 40, at 150 (emphasis added). Indeed, Virginia law specifically provides that

6

"[a] beneficiary may not transfer an *interest in a trust* in violation of a valid spendthrift provision and, except as otherwise provided in this article, a creditor or assignee of the beneficiary may not reach the interest or a distribution by the trustee *before its receipt by the beneficiary*." Va. Code Ann. § 55-545.02.C (emphasis added). The issue addressed by a spendthrift clause, thus, is the assignment of a beneficiary's interest before its distribution; once a distribution to a beneficiary has been made, a spendthrift clause has no application and the beneficiary can dispose of the property as she sees fit.

Moreover, the Spendthrift Clause unambiguously addresses the assignment of Betty's interest solely as a beneficiary and does not purport to restrict the Trustees' interest as legal owners of the 5% share:

> No *beneficiary* of any trust hereunder shall have any right (other than a right to disclaim) to assign, transfer, hypothecate, or otherwise encumber *his or her interest* in any trust benefits or payments, and no trust assets, benefits or payments in the possession or control of the Trustees shall be subject to any levy or attachment to pay claims (including without limitation claims for alimony or support of any spouse or former spouse) against any beneficiary.

Pl. Ex. 1 Art. III.H (emphasis added). The Spendthrift Clause thus did not prevent Betty from exercising her withdrawal right over Trust principal. Nor did it prevent her from exercising her authority as Trustee to make a distribution of Trust income or principal to herself with her co-Trustee's (the Settlor's) approval.

The Restatement (Third) of Trusts § 58, cited by Plaintiffs, makes clear that a spendthrift clause also does not restrict a principal withdrawal right. Comment b(1) to § 58 states that a spendthrift clause trust provision is inapplicable with respect to

> trust property over which the beneficiary has the equivalent of ownership, entitling the beneficiary to demand immediate distribution of the property. Thus, if an income beneficiary also holds a presently exercisable general power of appointment (that

7

>is, a power currently to compel distribution of trust property to the
>power holder), a spendthrift restraint will not prevent the
>beneficiary's creditors or transferees from reaching the property
>that is subject to the power.

Restatement (Third) of Trusts § 58 Cmt. b(1). Betty's withdrawal right is the equivalent of a general power of appointment (i.e., the "power currently to compel distribution of trust property [up to $100,000] to the power holder") and thus would not be subject to the Spendthrift Clause. *See also* Restatement (Second) of Trusts § 153(2) ("If the beneficiary is entitled to have the principal conveyed to him immediately, a restraint on the voluntary or involuntary transfer of his interest in the principal is invalid."); *id.* cmt. c ("*Where beneficiary entitled to immediate payment of the principal*. If a beneficiary is entitled to have the principal paid or conveyed to him immediately or at any time he may call for it, a restraint on alienation of his interest is invalid.").[3]

     Plaintiffs' repeated suggestion that allowing the 1992 assignment "would do violence to the settlor's intent," Mot. at 13, is baffling given that the Settlor specifically provided for withdrawal of principal and was aware of and specifically approved this very transaction. Far from "frustrat[ing] the settlor's" intent, *see* Mot. at 13, Betty's actions were entirely consistent with her son's intentions. The Settlor thus clearly did not intend for the Spendthrift Clause in the Betty 1989 Trust to apply either to Betty's withdrawal right or the Trustees' ability to distribute principal to her.

---

[3] Estate planners commonly use withdrawal rights in trusts in conjunction with spendthrift clauses. *See* Bogert, The Law of Trusts and Trustees § 234, at 57–58 (2d. ed. rev.) ("During the trust term the trustee may be given discretionary powers with respect to the timing and amounts of distributions of trust income and principal . . . . These discretionary powers and spendthrift provisions can help to protect the beneficiaries against the claims of creditors and the demands of friends and relatives. Further flexibility can be added by giving one or more beneficiaries limited powers to withdraw trust principal during the term of the trust or to appoint trust principal either during the trust term or at death by will, in any case with little or no adverse tax consequences.").

8

## II. The Assignment is Valid as to the Entire 5% Partnership Interest.

Perhaps acknowledging the weakness of their Spendthrift Clause argument, Plaintiffs next argue that, if the assignment is valid, it can only be valid as to a life interest in the Partnership because Betty owned only a life interest in the Betty 1989 Trust. But to state their argument is to reveal the fallacy behind it. Indeed, Betty's life interest in the Betty 1989 Trust was entirely separate from her 5% interest in the Partnership, which (1) she legally owned in her capacity as Trustee, along with her co-Trustee, the Settlor, and (2) was distributed as principal to her in her individual capacity in accordance with the Trust Agreement.

### A. The Trustees Had the Power to Distribute the 5% Share to Betty.

Under the Trust Agreement, the Settlor gave the Trustees broad power "generally to do anything, including without limitation the execution of all documents, with respect to any property, real or personal, which the Trustees could do if they owned such property absolutely." Pl. Ex. 1 Art. IV.N. Among their specifically denoted powers, the Trustees had the right to buy and sell property, make investments, trade stocks, employ agents, borrow money on behalf of the trust, and *make assignments of trust assets*. *Id.* Art. IV (incorporating Va. Code Ann. § 64.1-57 (1989), which permits trustees "to sell, assign, exchange, transfer and convey or otherwise dispose of, any or all of the investments and property, either real, personal or mixed, which may be included in, or may at any time become part of the trust or estate"). It is significant that, when the Settlor created the Trust on August 2, 1989, he appointed himself and his mother, Betty Koplar Bennett, as the sole co-Trustees of the Trust, a role they continued to hold at the time of the 1992 assignment. By appointing themselves, and not a third party, the Settlor assured that distributions would be forthcoming to his mother, as he and she saw fit. Contrary to Plaintiffs' contention that the 5% share "was owned by the Betty 1989 Trust," Mot. at 3, under Virginia law, the *two Trustees* were the legal owners of the property "with all powers over the trust

9

property that an unmarried competent owner has over individually owned property." *See* Va. Code Ann. § 55-548-15.2.a.

In the Trust document, when the Settlor considered the Trustees' obligations to make distributions for the benefit of his mother, he used very clear and specific language. First, he directed the Trustees to distribute so much of the net income of the Trust to his mother "as she may request or as the Trustees may deem advisable for her benefit for any reason." Pl. Ex. 1 Art. II.A. Second, apparently concerned that the net income of the Trust might be insufficient for his mother's needs and wants, the Settlor then gave the following direction to his Trustees with regard to the principal of the Trust:

> In addition, the Trustees shall distribute from time to time so much of the principal of the trust, but in no event in excess of One Hundred Thousand Dollars ($100,000) per year (which shall be non-cumulative), as the Settlor's mother may request or as the Trustees may deem advisable for the support, maintenance, or health of the Settlor's mother.

*Id.* Thus, even ignoring Betty's power to "request" principal from the Trust of up to $100,000, *see infra* Part II.B, the Settlor gave the Trustees the power to distribute principal of the Trust (up to a cap of $100,000 per year) "as the Trustees may deem advisable for the support, maintenance, or health of the Settlor's mother." The Trust also provided, through incorporation of the Trust statute, that the Trustees could "make distributions in cash or in kind or partly in each at *valuations to be determined by the fiduciary, whose decision as to values shall be conclusive*." *See* Pl. Ex. 1 Art. IV (emphasis added) (citing Va. Code Ann. § 64.1-57(1)(h)). Under Virginia law, "[w]here a trust is discretionary . . . , a court of equity has no jurisdiction to interfere with its exercise, so long as the trustee acts in good faith . . . in exercising . . . the power vested in him." *Givens v. Clem*, 59 S.E. 413, 414 (Va. 1907). Betty, by signing the assignment, and the Settlor, by consenting to it, exercised their discretion in good faith as Trustees in their transfer of the trust assets to the Betty 1992 Trust, and their determination that

the assets' value was under $100,000 is conclusive.[4]

Plaintiffs imply that the 1992 assignment was somehow ineffective because it did not "make[] any mention of the Betty 1989 Trust, nor are any signatures therein stated to be in any capacity relating to the Betty 1989 Trust." *See* Mot. at 7. But it is irrelevant that Betty and the Settlor did not explicitly use the word "trustee" on the assignment papers making and approving the transfer.[5] *See Needham v. Legge*, 70 Va. Cir. 337, 399 (Va. Cir. Ct. 2006) (noting that intent controls and holding that omission of word "trustee" on the signature line did not preclude holding that transferor was signing in capacity as trustee where intent to transfer as trustee was clearly shown); *see also Virginia & West Virginia Coal Co. v. Charles*, 251 F. 83 (E.D. Va. 1917) (noting that intent of drafters controls transfers of property). Betty conveyed all rights that she possessed in the 5% share by virtue of being Trustee of the Betty 1989 Trust, and her co-trustee (the "Settlor") consented to that transfer, as evidenced by his acceptance document. Indeed, to interpret the assignment papers otherwise would be absurd, since Betty assigned her "right, title and interest in the *partnership*" rather than her rights in the Betty 1989 Trust. As a beneficiary in her individual capacity, and contrary to Plaintiffs' assertions, Betty had no life interest in the Partnership, per se. Her life interest was in the Betty 1989 Trust, which in turn had a 5% interest in the Partnership. The assignment thus can only reasonably be read to reflect Betty-as-Trustee's distribution of principal to Betty-as-beneficiary. At bottom, there can be no serious dispute concerning the intentions of the two Trustees: they intended to and did transfer the Betty 1989 Trust's interest in the Partnership to the Betty 1992 Trust.

---

[4] At minimum, there is a factual dispute concerning the principal value of the 5% share precluding dismissal.

[5] Indeed, Virginia law does not even require that a transfer of a trust interest be in writing. *See, e.g., Burns v. Equitable Assoc.*, 265 S.E.2d 737, 744 (Va. 1980) (noting that the Virginia version of the statute of frauds does not require a writing for grants and assignments of trust interests).

11

### B. Betty Had an Absolute Right of Withdrawal.

In addition to her power as Trustee, Betty had the ability as beneficiary to make withdrawals of principal pursuant to the Trust Agreement. The words "as the Settlor's mother may request" in Article II constitute what is often referred to as a beneficiary withdrawal right— a right to demand a distribution of Trust Property, in this case property with a value of up to $100,000 per year, as a substitute for the trustees' needing to make a determination concerning her "support, maintenance, or health." *See, e.g.,* Bogert, The Law of Trusts and Trustees § 1099, Trust Form FIRST, Sections 2 & 3 (3d ed.) ("After a beneficiary has reached the age of 25 years, the beneficiary may withdraw any part or all of his or her share at any time or times by written *request* delivered to the trustee." (emphasis added)).

In 1992, at a time when the value of the 5% share was not more than $100,000, Betty chose to exercise that right by transferring the 5% share to her revocable living trust (the Betty 1992 Trust). The fact that she did so in a simple assignment document that did not explicitly spell out her authority to do so does not diminish the fact that she had that authority. Pursuant to the terms of the Trust, the Trustees were obligated to honor that request.

### III. Defendant's Statute of Limitations and Laches Arguments Preclude Dismissal of its Counterclaims.

Finally, even if Plaintiffs could show that the assignment documents were insufficient, the time for challenging the transaction has long since passed. The Settlor accepted the 1992 assignment through a document noting his capacity as general partner of the Partnership. Plaintiffs do not and cannot dispute that this document was signed concurrently with or shortly after the documents signed by Betty assigning the property and then accepting it on behalf of the Betty 1992 Trust. The general partner thus had knowledge of the assignment in 1992, and under D.C. law that knowledge put the limited partners on constructive notice that the assignment had occurred. *See* D.C. Code § 33-101.02(f) ("[A] partner's knowledge, notice, or receipt of a

12

notification of a fact relating to the partnership is effective immediately as knowledge by notice to, or a receipt of the notification by, the partnership . . . ."); Bromberg & Ribstein on Partnership § 14.06, at 14:48 (noting that the Code's constructive notice provision applies equally to provide constructive notice to a limited partnership of a general partner's knowledge). Moreover, the general partner's acceptance deemed the assignment to be valid on behalf of the partnership, and his actions bound the other limited partners.[6]

By information and belief, all Plaintiffs were limited partners in the Partnership at the time the Settlor signed the acceptance.[7] And because, as described *supra*, the assignment papers clearly purported to transfer an interest in the Partnership rather than the Trust, Plaintiffs were on notice that Betty and the Settlor were attempting to transfer the Partnership interest into the Betty 1992 Trust. Any claim that the assignment was wrongful or mistakenly drafted thus accrued in 1992, and Plaintiffs cannot now disclaim the validity of the assignment.[8] *See* D.C. Code § 12-301(2) (stating that the limitations period for "recovery of personal property" is three years); *O'Neill v. Cole*, 72 S.E. 382, 387–88 (Va. 1952) (holding that laches precluded claim for

---

[6] Plaintiffs inexplicably did not attach the Partnership Agreement to their Motion. *See* Mot. at 8 n.4. A copy will be requested in discovery. As a result, Defendant assumes for purposes of this Memorandum that the Settlor noted his status as general partner in the acceptance document because the partnership agreement permits assignment only with general partner approval. Such a provision in the Partnership Agreement gives the general partner "the power to dilute or destroy voting rights given to limited partners" by permitting him to act on behalf of the partnership to approve or disapprove new limited partners. *See* Bromberg & Ribstein on Partnership § 13.06(d), at 13:36.

[7] Defendant's allegation that Plaintiffs were limited partners in 1992 is based on a listing of the limited partners at a later date. *See* Ex. A. Though Plaintiffs Kevin S. Bennett and Bryan G. Bennett have sued in their individual capacities, they concede that their claims are derivative of the Trusts' claims. *See* Mot. at 8 n.5 (noting that Richard A. Bennett, III is not named as an individual plaintiff because he is not yet entitled to a "personal distribution *from the trust* established for his benefit"). Their claims are thus barred alongside that of their Trusts.

[8] Defendant intends to file a motion that he is entitled to judgment as a matter of law on this ground once he is able to determine the scope of the general partner's authority in the Partnership Agreement and confirm that each of the Trusts serving as Plaintiffs were, in fact, limited partners in 1992. These factual disputes preclude dismissal at this time.

13

fraudulent transfer of property where plaintiff had been an adult more than eight and one-half years since the alleged fraud and the purportedly fraudulent documents had been matter of public record during that time).

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny the Plaintiffs' Motion to dismiss Defendants' Counterclaim. A proposed Order is attached.

Dated: October 22, 2007

>
> Respectfully submitted,
> WILLIAMS & CONNOLLY LLP
> /s/ Robert A. Van Kirk
> Robert A. Van Kirk (D.C. Bar No. 430588)
> 725 Twelfth Street, NW
> Washington, D.C. 20005
> (202) 434-5000
>
> *Attorney for Defendant/Counterclaim Plaintiff Robert S. Bennett, as Trustee for the Betty 1992 Trust*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2007, a true and correct copy of Defendant's Memorandum in Opposition to Plaintiffs' Motion to Dismiss Counterclaim for Failure to State a Claim and Proposed Order were served on the following individuals via the Court's electronic filing system:

Allen V. Farber
Brian A. Coleman
1500 K. Street, N.W., Suite 1100
Washington, D.C. 20005

/s/ Robert A. Van Kirk

# EXHIBIT A

**EXHIBIT "B"**
**TO THE**
**AMENDMENT TO LIMITED PARTNERSHIP**
**OF**
**NEW JERSEY AND H LIMITED PARTNERSHIP**

| Name and Business Address | Initial Capital Contribution | Percentage of Partnership Interest |
|---|---|---|
| **General Partner:** | | |
| NJ-H, Inc.* 3524 K Street, N.W. Washington, D.C. 20007 | $ 10.00 | 1.0% |
| **Limited Partners:** | | |
| Estate of Richard A. Bennett, Jr., Deceased 3524 K Street, N.W. Washington, D.C. 20007 | $ 87.50 | 8.75% |
| LuAnn L. Bennett 3524 K Street, N.W. Washington, D.C. 20007 | $ 50.00 | 5.0% |
| Robert S. Bennett 9521 Purcell Drive Potomac, MD 20854 | $ 50.00 | 5.0% |
| The Kevin S. Bennett Trust 3524 K Street, N.W. Washington, D.C. 20007 | $ 123.30 | 12.33% |
| The Bryan G. Bennett Trust 3524 K Street, N.W. Washington, D.C. 20007 | $ 123.30 | 12.33% |
| The Richard A. Bennett, III Trust 3524 K Street, N.W. Washington, D.C. 20007 | $ 123.40 | 12.34% |
| James Thorburn Ober, Moore, Thornhum & Norne, P.C. 3530 Post Road Southport, CT 06490 | $ 20.00 | 2.0% |
| Robert Plager 362 Branchport Drive Chesterfield, MO 63017 | $ 20.00 | 2.0% |
| Peter Weidenbruch 6940 Race Horse Lane Rockville, MD 20852 | $ 20.00 | 2.0% |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE KEVIN S. BENNETT TRUST U/A <br> DATED AUGUST 2, 1989, et al., <br><br> Plaintiffs/Counterclaim Defendants, <br><br> v. <br><br> ROBERT S. BENNETT, as Trustee for the <br> BETTY KOPLAR BENNETT TRUST <br> AGREEMENT DATED MAY 13, 1992, <br><br> Defendant / Counterclaim Plaintiff. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civ. No. l:07-cv-01519 (CKK) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## [PROPOSED] ORDER

Upon consideration of Plaintiffs' Motion to Dismiss Counterclaim for Failure to State a Claim, Defendant's Opposition, and any related documents, it is hereby ORDERED that the foregoing motion is DENIED.

SO ORDERED on this ____ day of ____, 2007.


_____
**Colleen Kollar-Kotelly**
**United States District Court Judge**

**Copies to:**

Robert Van Kirk
725 Twelfth Street, NW
Washington, DC 20005

Allen V. Farber
Brian A. Coleman
1500 K. Street, N.W., Suite 1100
Washington, D.C. 20005