IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE KEVIN S. BENNETT TRUST U/A<br>DATED AUGUST 2, 1989, et al.,<br><br>Plaintiffs / Counterclaim Defendants,<br><br>v.<br><br>ROBERT S. BENNETT, as Trustee for the<br>BETTY KOPLAR BENNETT TRUST<br>AGREEMENT DATED MAY 13, 1992,<br><br>Defendant / Counterclaimant. | Civ. No. 1:07-cv-01519 (CKK) |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
## TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM

Plaintiffs and Counterclaim Defendants hereby reply as follows to the Memorandum in Opposition filed by Defendant Robert S. Bennett, as Trustee for the Betty 1992 Trust ("Defendant's Opp."), to Plaintiffs' motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Defendant's Counterclaim for failure to state a claim upon which relief may be granted.

### I. ARGUMENT

In his Opposition, Defendant does not dispute that the 1992 Assignment and Betty 1989 Trust properly are before the Court under Rule 12(b)(6), nor does Defendant dispute that the 5% partnership share, if not assigned to the Betty 1992 Trust, was held by the 1989 Trust and would pass to Plaintiffs at Betty's death. Defendant also does not dispute Plaintiffs' characterization of his claim but rather invites, as do Plaintiffs, consideration of the substantive viability of his claim that the 5% share of New Jersey and H Limited Partnership was transferred from the 1989 Trust to the Betty 1992 Trust by operation of the 1992 Assignment attached to Defendant's pleading.

Turning, then, to the merits of Defendant's reliance on the 1992 Assignment, Defendant's position must be rejected as a matter of law because it is based entirely on an attempt, by sleight

of hand, to rewrite the 1992 Assignment into something it plainly is not, which effort is squarely foreclosed by the express terms of the 1992 Assignment itself. Specifically, in an effort to fit the 1992 Assignment within the express limitations and prohibitions of the 1989 Trust, Defendant contends that the 1992 Assignment is a *distribution* of the 5% share to *Betty Bennett personally*, as directed by *Betty as trustee of the 1989 Trust* and as approved by *Richard Bennett as co-trustee of the 1989 Trust*. However, in actuality, the 1992 Assignment (assuming *arguendo* its authenticity) provides on its face that it is a purported *assignment* (not a "distribution") of the 5% share to a *third party, namely, the Betty 1992 Trust* (not to Betty herself, the sole life beneficiary of the 1989 Trust), directed by *Betty personally* (not as a trustee of the 1989 Trust), and approved by Richard A. Bennett, Jr. *only as General Partner of the New Jersey and H Street Limited Partnership* (not as co-trustee of the 1989 Trust).

Defendant's attempt to recast the 1992 Assignment as a simple distribution of annual benefits by the 1989 Trust's co-trustees to its life beneficiary fails, then, because the 1992 Assignment has nothing whatsoever to do with the 1989 Trust – it does not even mention it. Both Betty and Richard A. Bennett, Jr. signed in capacities other than as trustees of that trust, and there are no facts to support the assertion that the 1992 Assignment can be read as a distribution of life benefits by co-trustees of the 1989 Trust – nor could there be, since the named assignee, the Betty 1992 Trust, was not even a beneficiary. This is not even a mere failure of formalities; rather, the 1992 Assignment evinces, on its face, that Betty believed herself to be at the time the outright owner of the 5% share – which belief was, undisputedly, a factual mistake. This Court may not substitute its judgment as to what Betty and the trustees *would have done* had they been aware of the error, but rather must take the 1992 Assignment as it finds it – and it

finds it as a nullity, as it is, at most, an assignment of a life interest under which no distributions are alleged ever to have been made by the trustees of the 1989 Trust. See Part A, infra.

In any event, the fact that the purported "distribution" evinced by the 1992 Assignment is to the *Betty 1992 Trust*, rather than to any named beneficiary under the 1989 Trust, renders Defendant's argument fatally defective in view of the 1989 Trust's spendthrift provision. Defendant's effort to gloss over this fact does not change the fact that the 1989 Trust bars its beneficiaries from assigning their interests, and that is exactly what Betty purports to have done. See Plaintiffs' Mem., Exh. 1 at p.5, Art. III.C. This prohibition is plainly enforceable under Va. Code §§ 55-541.03, 55-545.02(A) and Va. Code § 55-545.02(C). See Part B, infra.

Perhaps recognizing that his reinterpretation of the 1992 Assignment can neither be squared with its plain language nor overcome the 1989 Trust's spendthrift provision, as a fallback Defendant argues that Plaintiffs are somehow time-barred from challenging the 1992 Assignment. Putting aside the fact that a limitation or laches defense can only be used to *compel* dismissal and not *prevent* dismissal, Defendant's reasoning fails for the same reason that his assignment argument fails – namely, because the assignment was never effective anyway. The 1992 Assignment was not a distribution of life benefits under the 1989 Trust, and even if it were it would have been void, such that in either case, the 5% share was never transferred. Plaintiffs were no more obligated to file a lawsuit to invalidate the 1992 Assignment than if the assignment had been made by Betty Bennett to the Tooth Fairy. In any event, Plaintiffs' first notice of an actual dispute was in 2007, when Defendant purported to vote the shares. See Part C, infra.

In sum, Defendant has failed to show that he plausibly can establish a viable legal claim for the 5% interest based on the 1992 Assignment. As such, Plaintiff's motion to dismiss must be granted, and the Counterclaim should be dismissed with prejudice.

    A.    <u>The 1992 Assignment Cannot Be a Trustee-Authorized Distribution Under the 1989 Trust to its Life Beneficiary</u>.

As established in Plaintiff's opening memorandum ("Plaintiffs' Mem."), the 1992 Assignment is ineffective to transfer ownership of the 5% share to the Betty 1992 Trust because Betty had, at the time of the assignment, only a life interest in the 5% partnership share, <u>see</u> Plaintiffs' Mem. at 14-15, and the assignment was ineffective under the 1989 Trust's spendthrift provision in any event, <u>see id.</u> at 10-14. To overcome these hurdles, Defendant asserts that the 1992 Assignment was a permissible annual life distribution by the co-trustees of the 1989 Trust (of which Betty was one) to its life beneficiary, Betty, pursuant to the trust provision permitting distribution of up to $100,000 per year in principal to Betty. This interpretation fails for a litany of reasons, all of which are readily evident from the face of the 1992 Assignment.

First, the 1992 Assignment purports, on its face, to be an assignment to the *Betty 1992 Trust* – not to Betty. <u>See</u> Answer and Counterclaim, Attachment A thereto at p.1 (hereinafter cited as the "1992 Assignment"). The Betty 1992 Trust, of course, was never a beneficiary under the 1989 Trust. <u>See generally</u> Plaintiffs' Mem., Exh. 1 thereto (hereinafter cited as the "Betty 1989 Trust" or the "1989 Trust"). Thus the 1992 Assignment to a non-beneficiary cannot be a life beneficiary distribution. To be sure, Betty also was a co-trustee under the 1989 Trust, but the co-trustees were obligated under that trust to distribute life benefits, if at all, only to Betty personally. <u>See</u> 1989 Trust at Art. II.A. Curiously, Defendant never bothers to acknowledge that the Betty 1992 Trust is not a beneficiary, but it is incontrovertible that Betty and the 1992 Trust she created are separate and distinct legal entities. <u>See</u> George T. Bogert, Trusts § 8, at 19-20 (6th Ed. 1987); <u>Fletcher v. Fletcher</u>, 480 S.E.2d 488 (Va. 1997); <u>City Bank Farmers Trust Co. v. Helvering</u>, 313 U.S. 121 (1941); <u>Helvering v. Clifford</u>, 309 U.S. 331 (1940). Simply put, there is

no legally permissible way that the trustees of the 1989 Trust could have made a life beneficiary distribution directly to the Betty 1992 Trust, because that entity simply was not a beneficiary.

Second, the 1992 Assignment is not signed by the two co-trustees of the Betty 1989 Trust in that capacity. In fact, the 1989 Trust is mentioned re referenced *nowhere* in 1992 Assignment. Defendant makes much of the fact that the signatures of both co-trustees (Betty and Richard Bennett) do appear on the document, but neglects to mention that those signatures appear only in unrelated capacities.[1] Specifically, Betty's signature appears in her personal capacity on the "Assignment" page, and then in her capacity as "trustee of the [Betty 1992 Trust]" on the "Acceptance by Trustee" page. See 1992 Assignment at p.1-2. Defendant cites Needham v. Legge, 70 Va. Cir. 337 (Fairfax County 1999) for the proposition that a trustee's signature need not always include the words "as trustee" if the intent is otherwise clear, see Defendants' Opp. at 11, but that case is inapposite because here, Betty Bennett must have understood the difference between signing in her personal capacity and signing as a trustee, given that she did sign in those two different capacities on this very document. In other words, given that Betty signed *as trustee* of the Betty 1992 Trust on the "Acceptance by Trustee" page, the lack of any similar language as respects her role as a co-trustee of the 1989 Trust on the "Assignment" page demonstrates an intent *not* to bind herself in that capacity. See 1992 Assignment at p.1-2.

---

[1] It is a well settled principle of Virginia law that the capacity in which a party signs an agreement determines or affects the capacity in which that party is bound. See, e.g., Pioneer Nat'l Title Ins. Co. v. Cranwell, 235 Va. 597, 600, 369 S.E.2d 678, 680 (1988) ("[T]he commitment was signed and accepted by James E. Long in his capacity as President of Long Construction. Significantly, Long did not sign in his individual capacity . . . ."); see also Gottleib v. Hall, No. 1:05cv1184, 2006 U.S. Dist. LEXIS 34504, at *9 (E.D. Va. May 19, 2006) ("As defendant signed only in his capacity as an agent of DesignTech, he is not bound as a principal debtor."). Moreover, just because a party can sign a document on behalf of more than one party does not mean that such a signature is always behalf of more than one party. See Bishop v. Med. Facilities of Am. XLVII (47) Ltd. P'ship, 65 Va. Cir. 187, 191-92 (2004) (holding that although a son held a power of attorney for his mother, the mother was not liable on a contract signed by the son because there was no evidence that the son signed the document in his capacity as his mother's agent).

This capacity distinction is even more plain as to Richard A. Bennett, Jr., the co-trustee of the 1989 Trust. His purported signature on the "Acceptance of Assignment by General Partner" page plainly was <u>not</u> in his capacity as a co-trustee of the 1989 Trust, given that his intended capacity <u>is</u> stated. The document states: "I, RICHARD A. BENNETT, JR., as General Partner of the NEW JERSEY AND H STREET LIMITED PARTNERSHIP, accept the foregoing Assignment." <u>See</u> <u>id.</u> at p.3 [sic].[2] In other words, Richard A. Bennett, Jr. was signing only as general partner of the referenced partnership, presumably pursuant to a requirement that the general partner approve such share assignments. The fact that Richard, like Betty, plainly knew how to sign in one capacity as opposed to another, evinces an intent that in singing in one specified capacity, he did not intend to be bound in any other capacity. <u>See</u> n.1, <u>supra</u>. Indeed, nothing in the single sentence comprising the "Acceptance of Assignment of General Partner" indicates any intent whatsoever to exercise the significant powers of a trustee, of which role he was no doubt aware given that he himself settled that trust. <u>See</u> <u>id.</u> at p.3. That page merely recites the partnership's acceptance of the transfer, and nothing more. If Richard A. Bennett, Jr. truly intended to authorize, as trustee under the 1989 Trust, a life distribution to its beneficiary, his stated capacity would not have been so limited, and presumably his name and signature also would have appeared alongside Betty's on the first "Assignment" page.

Third, even apart from the lack of any signature by Betty or Richard in either's capacity as co-trustee of the 1989 Trust, the conveyance language used (and not used) in the 1992 Assignment reflects that it was meant as something other than a trustee's distribution of benefits to the 1989 Trust's life beneficiary. There is no reference to Betty's status as a life beneficiary

---

[2] It bears reiteration here that the 1992 Assignment references a different partnership than the one in which Defendant purported to vote his 5% share as trustee of the 1992 Trust. See Plaintiffs' Mem. at 9 n.6 (noting that there is no "Street" in New Jersey and H Limited Partnership). Defendant does not address this point.

under the 1989 Trust; no reference to the $100,000 annual cap on distributions of principal; no reference to the valuation of that 5% interest or the trustees' judgment as to its interplay with that $100,000 cap; no reference to any request by Betty for a distribution under that 1989 Trust; and no reference to any determination by the trustees that the purported distribution was "for the support, maintenance or health" of Betty. See 1992 Assignment; 1989 Trust at Art II.A. Indeed, the language actually used – that Betty "hereby assign[s] all my right, title and interest" to the designated "grantee" – is not the language of a life distribution of property held by a trustee, but rather is the language used by a person who believes she *currently owns the property outright.* See Fletcher, 480 S.E.2d at 491 ("The beneficiary is the equitable owner of trust property, in whole or in part. The trustee is a mere representative whose function is to attend to the safety of the trust property and to obtain its avails for the beneficiary in the manner provided by the trust instrument"), citing Bogert, *The Law of Trusts and Trustees* § 961, at 2 (Rev. 2nd ed. 1983). In this regard, the Court properly make take judicial notice of the fact that the 1989 Trust and 1992 Assignment before the Court are of a relatively sophisticated nature and do not appear to have been drafted by laypersons, rendering this action unlike one in which a lesser-educated lay testator requires the Court's assistance to rescue his imprecise writings to salvage his intent. To the contrary, the Court may presume that the 1992 Assignment accurately reflects Betty's intent, albeit based on a mistake of fact. The court similarly may take judicial notice of Defendant's recent filing in a related case in which he adopted the opposite interpretation of a similarly worded assignment of property from Betty to her 1992 Trust. See Exhibit A, attached hereto.[3]

---

[3] Exhibit A is a pleading filed by Defendant on October 15, 2007 in a concurrent proceeding pending in Florida probate court, *In Re: Estate of Betty Koplar Bennett*, in which Defendant attached a copy of a purported assignment of personal property by Betty personally to the Betty 1992 Trust. See Exhibit A. This pleading may be considered in connection with this Rule 12(b)(6) motion. See Covad Comms. Co. v. Bell Atlantic Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005) (district court may consider pleadings from other court proceedings on Rule 12(b)(6) motion); Braude & Margulies, P.C. v. Fireman's Fund Ins. Co., 468 F. Supp. 2d 190, 195 (D.D.C. 2007) (same). In paragraph 11 of that pleading, Defendant states: "A copy of [Betty K. Bennett's] assignment of all her tangible

Defendant's sophistry notwithstanding, there is simply no legally viable basis to recast the 1992 Assignment as anything other than just what it says it is – an attempted assignment by Betty of a personally-owned 5% interest in the partnership to her trust. See Rady v. Staiars, 168 S.E. 452 (Va. 1933) ("[i]f the meaning of the words is plain, there is no room for construction"); Alderman v. Virginia Trust Co., 25 S.E.2d 333, 341-43 (Va. 1943) ("[t]o come to any other conclusion would be to make a will for [the testator and settlor] which he did not intend to make"). Given the undisputed fact before this Court that Betty did not, in fact personally own the 5% share at that time, see Answer at ¶ 11, the 1992 Assignment can only be viewed as a document created with an errant understanding as to whether that 5% share was then owned by Betty personally or by the 1989 Trust.[4] In any event, whatever the genesis of the 1992 Assignment, that document cannot, as a matter of law, be viewed as a distribution of life benefits to Betty by the 1989 Trust's trustees. Because Defendant's Counterclaim is predicated solely on that implausible theory, it must be dismissed. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (claim for relief must be "plausible on its face" to survive Rule 12(b)(6) motion).

---

personal property to her Trust is attached as Exhibit 1." See Exhibit A. Notably, the assignment attached as Exhibit 1 to that pleading is similar in form to the 1992 Assignment in this case, and likewise appears on its face to be an assignment of property from Betty to her 1992 Trust. Tellingly, in the Florida pleading Defendant does *not* contend (as he does here) that Betty secretly intended to sign that assignment in her capacity as trustee of the 1989 Trust, nor does Defendant contend that the assignment was, plain language notwithstanding, actually meant to be a distribution of life benefits under that trust. Rather, Defendant avers that the assignment was, just as it appears, signed by Betty in her *personal* capacity to *assign* property she actually *owned* to her 1992 Trust. Apparently the creative theory Defendant advances in this case was minted for this Court alone.

[4] Because the motion before the Court is predicated solely on the pleadings, Plaintiffs have deferred any discussion of how the 1992 Assignment came to pass, and of the fact that the 1992 Assignment subsequently was disregarded as evidenced by the trustees' conduct after 1992. Plaintiffs maintain that that their motion may be granted without such information, and without costly discovery into Defendant's unsupportable theory of recovery. However, the Court properly may take notice of the fact that the 1992 Assignment was executed, according to its first page, just 10 weeks after the Betty 1992 Trust was created, suggesting that it was part of an estate-planning effort to move all of Betty's assets into her newly created trust to escape probate. See also n.3, supra, and Exhibit A hereto (referencing a similar assignment by Betty of property to her 1992 Trust). Given that, had Betty been aware that the 5% share was held by the 1989 Trust and not owned by her personally, presumably she would have had no reason to attempt the 1992 Assignment nor to request withdrawal of any part of the 1989 Trust's income or principal to assign it to her 1992 Trust, since the 5% share was, as a trust asset, already protected from probate.

    B.    <u>The Spendthrift Provision of the 1989 Trust Invalidates the Attempted Assignment to the Betty 1992 Trust In Any Event.</u>

Even apart from the linguistically indefensible interpretation of the 1992 Assignment that Defendant advocates, Defendant's position also suffers from an independent defect. That is, *even if* the 1992 Assignment plausibly can be recast as a distribution of life benefits by the 1989 Trust's co-trustees, it *still* fails as a matter of law because the distribution is *not* to Betty personally, but rather to the 1992 Trust – and as such the proposed transfer of benefits to a non-beneficiary third party is squarely foreclosed by the 1989 Trust's spendthrift provision.

Defendant stubbornly refuses to admit that, even under his theory, the 1992 Assignment is not to a beneficiary, asserting that "the assignment was the distribution to the beneficiary, and the spendthrift provision does not apply." See Defendants' Mem. at 2, 6-7. However, there can be no question that the 1992 Assignment's grantee is the 1992 Trust, which is not a beneficiary at all. See 1992 Assignment at p.1; 1989 Trust at Art. II. The fact that Betty settled the 1992 Trust is of no moment given the separate character of that trust, see p.4, supra, and given the lack of any statutory exception to the prohibition of voluntary restraints on alienation by beneficiaries of a trust containing a spendthrift provision.[5] Defendant has not pointed to any separate assignment from the 1989 Trust to her personally, nor has he alleged (because he cannot) that one exists. As such, the 1992 Assignment purports to assign Betty's beneficiary interest to a non-beneficiary, rendering that attempted assignment void under Article III.C of the 1989 Trust. See Plaintiffs' Mem. at 9-14.

---

[5] See Va. Code § 55-545.02(C). To hold otherwise would render the spendthrift provision meaningless, since the parties to the Betty 1989 Trust obtained the benefit of that provision by preventing third-party creditors from reaching the trust assets. Under Virginia law, with that benefit comes the burden of barring the sole life beneficiary from assigning away income rights to third parties. That the "third party" here was a separate trust created by Betty herself does not change this analysis, since if such distributions to beneficiary-created trusts were permitted, then beneficiaries could *always* circumvent the involuntary restraint requirement merely by settling a trust, rending that code provision a dead letter. See Va. Code § 55-545.02(A) ("A spendthrift provision is valid only if it restrains both voluntary and involuntary transfer of a beneficiary's interest.").

Defendant also briefly appears to suggest that the spendthrift provision is not enforceable, relying on a comment in the Restatement that the presence of a "withdrawal right" for Betty in the 1989 Trust "would not be subject to the Spendthrift Clause." Defendants' Opp. at p. 7-8. However, whatever the old common law or prior statutory rule may have been, under current Virginia law, the presence of a "withdrawal right" does not invalidate a spendthrift provision under Virginia's governing Uniform Trust Code. As noted in Plaintiffs' opening memorandum, Va. Code § 55-545.02(A) provides: "A spendthrift provision is valid only if it restrains both voluntary and involuntary transfer of a beneficiary's interest." Here, Section III.C. of the Betty 1989 Trust meets this sole requirement of validity, as it restrains both voluntary and involuntary transfers. See 1989 Trust, p.5 at Art. III.C.; Plaintiffs' Mem. at 11-12. This triggers Va. Code § 55-545.02(C), which provides that "[a] beneficiary may not transfer an interest in a trust in violation of a valid spendthrift provision . . . ." Defendant concedes that this statutory provision governs here. See Defendant's Opp. at 6-7 (citing § 55-545.02(C)); accord Va. Code § 55-551.06(1) (amendments to trust code apply to earlier-created trusts). In any event, the trust language cited by Defendant falls well short of the sort of beneficiary "ownership equivalence" referenced by the Restatement. See Restatement (Third) of Trusts § 58, cmt. b(1).[6]

Defendant's remaining objections to the spendthrift provision are red herrings, stemming from his refusal to come to terms with the fact that the assignee of the 1992 Assignment is not a

---

[6] For example, the 1989 Trust expressly limits Betty's right to a distribution of principal by stating that any such distribution "shall . . . [be] in no event in excess of One Hundred Thousand Dollars ($100,000) per year . . . ." See 1989 Trust at Art. II.A. Thus there is not unfettered access. Additionally, the 1989 Trust only permits distribution of principal to Betty "as [she] may request or as the Trustees may deem advisable for the support, maintenance, or health of [Betty]." Contrary to Defendant's proffered reading, this latter clause – "for the support, maintenance, or health of the Settlor's mother" – modifies both distributions "as the Settlor's mother may request" and distributions "as the Trustees may deem advisable." This also shows a lack of an "equivalent of ownership," as Betty's right to demand distribution was subject to the requirement that it be limited to her support, maintenance or health. Even if this language is susceptible of an alternate interpretation, the Court should select the interpretation that does not render Article III.C. (the spendthrift provision) a nullity, and that does not undermine the settlor's plain intent and purpose that the spendthrift provision be valid so as to prevent creditors from invading the corpus of the trust.

beneficiary. For example, Defendants state: "Plaintiffs would have the court believe that the Settlor specifically provided in Article II of the Trust Agreement that his mother would have a withdrawal right of up to $100,00 per year and then took it away in Article III." Again, Plaintiffs have no quarrel with Betty's *personal* right, as a *beneficiary*, to request and receive distributions under the 1989 Trust, subject to the strictures of Article II.A, but that simply is not what is at issue in the 1992 Assignment. Likewise, Defendant emphasizes that Va. Code § 55-545.02(C) bars distributions only "before its receipt by the beneficiary," and that "once a distribution to a beneficiary has been made, a spendthrift clause has no application . . . ." Defendant's Opp. at 7. However, the 1992 Assignment is an attempted assignment of the 5% before the beneficiary, Betty, ever received it, and there is no contention otherwise. That is, even under Defendant's own theory that the 1992 Assignment effected a distribution from Betty as trustee of the 1989 Trust directly to the Betty 1992 Trust, Betty *still* was cut out of the transaction in her capacity as beneficiary of the 1989 Trust. As such, the 1989 Trust's spendthrift provision still applies.

In sum, because Betty, a beneficiary of the 1989 Trust, plainly attempted to assign the 5% share to a third party non-beneficiary in the 1992 Assignment, the 1989 Trust's spendthrift provision operated to render that attempted transfer void.

C.   Defendant's Limitations and/or Laches Defense Is Inapplicable.

As a final fallback, Defendant argues that Plaintiffs claims are time-barred, either under the applicable statute of limitations or the doctrine of laches, from challenging the 1992 Assignment. This argument is wholly without merit.

As a threshold matter, a limitation or laches defense is just that – a defense – and can only be used to *compel* dismissal, not *prevent* dismissal. Defendant cannot preserve his own legally defective Counterclaim by arguing that Plaintiffs' affirmative claims are time-barred.

Defendant cites no authority for this novel application of a limitations defense to *support* a claim, and Plaintiffs are aware of none.

In any event, Defendant's argument necessarily is predicated on the viability of his erroneous interpretation of the 1992 Assignment. See Defendant's Mem. at 12 (arguing that the general partner was on notice that an assignment "had occurred"); id. at 13 ("Plaintiffs cannot now disclaim the validity of the assignment"). As such, so long as the Court rejects Defendant's substantive legal arguments as to the validity of the assignment of the 5% share from the 1989 Trust to the 1992 Trust, it must reject the instant timeliness argument as well.

Restated, since Betty Bennett had only a life interest under the 1989 Trust, and since no life distributions are alleged to have been made (apart from Defendant's argument as to the 1992 Assignment), there was nothing actually transferred. See Plaintiffs' Mem. at 14-15. Further, that attempted assignment was void *ab initio* under the spendthrift provision. See id. at 10-14.[7] As such, there was no transaction for Defendant to seek to undo, and the statute of limitations never began to run. See D.C. Code § 12-301(2) (providing a three-year limitation period for *recovery* of personal property, and cited by Defendant as the applicable statute). In this sense, Defendant's limitation and laches arguments are wholly dependent on the Betty 1992 Trust actually having received and taken possession of the 5% share – which as discussed above, could not have happened if Plaintiffs' view that the 1992 Assignment was inapplicable and/or ineffective is correct. In that event, there was nothing to for Plaintiffs to challenge, and no reason for Plaintiffs to initiate a complaint to "undo" the void assignment.

---

[7] Case authorities uniformly provide that a transaction in violation of a spendthrift clause is void *ab initio*. See, e.g., Halliburton Co. v. E.H. Owen Family Trust, 773 S.W.2d 453 (Ark. 1989); Hardy v. Hardy, 330 P.2d 278, 281 (Cal. App. 1958); Hildress Press Employees Fed. Credit Union v. Conn. Gen. Life Ins. Co., 295 A.2d 54, 57 (Conn. Supp. 1972); Smith v. Smith, 253 N.W. 143 (Minn. 1977); Bixby v. St. Louis Trust Co., 22 S.W.2d 813 (Mo. 1929); Lundgren v. Hogland, 711 P.2d 809, 813-14 (Mont. 1985); Heyl Estate, 43 A.2d 130 (Pa. 1945).

In fact, Plaintiffs' Complaint was filed only after Betty passed away in May 2007, when the new purported trustee, Robert S. Bennett, excavated the 1992 Assignment from the files, concocted his theory that the Betty 1992 Trust owns this 5% partnership share, and purported to vote that share on behalf of the 1992 Trust in a recent transaction. See Complaint at ¶ 1; Answer at ¶ 1. Defendant does not allege that any effort was made by the Betty 1992 Trust to vote or otherwise exercise dominion over the 5% share between 1992 and 2007, or that the Betty 1992 Trust did anything at all during that period to advise Plaintiffs of its belief that the assignment was valid. See Irvine v. Gradoville, 95 U.S. App. D.C. 263; 221 F.2d 544 (1955) (demand for payment required to trigger limitations period). Indeed, if any action is time-barred or otherwise precluded on laches grounds, it is Defendant's own Counterclaim. In any event, Defendant cites no factual allegations apart from the 1992 Assignment itself in support of its claim that Plaintiffs were obliged to act. That is an insufficient basis to assert this defense.

## II. CONCLUSION

For the foregoing reasons, and for the reasons stated in Plaintiffs' opening memorandum, Plaintiffs respectfully request that the Court dismiss the Counterclaim, with prejudice, for failure to state a claim upon which relief may be granted.

Dated: November 1, 2007

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ Brian A. Coleman
    Allen V. Farber (D.C. Bar No. 912865)
    Brian A. Coleman (D.C. Bar No. 459201)
    1500 K Street, N.W., Suite 1100
    Washington, D.C. 20005
    (202) 842-8800

*Counsel for Plaintiffs / Counterclaim Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Court through the ECF system on the 1st day of November, 2007, and that service will be made electronically by the Court's system to Robert A. Van Kirk, counsel for Defendant and Counterclaimant.

/s/  Brian A. Coleman

# EXHIBIT A

Oct 16 2007 4:04PM   HP LASERJET FAX                                                        P.7

|  |  |
|---|---|
| IN RE: ESTATE OF<br><br>BETTY KOPLAR BENNETT,<br><br>Deceased.<br>_____/ | IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA<br><br>PROBATE DIVISION<br><br>CASE NO. 502007CP004233XXXXSB |

### ROBERT S. BENNETT'S RESPONSE TO COUNTER-PETITION FOR APPOINTMENT OF ADMINISTRATOR AD LITEM

ROBERT S. BENNETT ("Robert") responds to the Counter-Petition For Appointment of Administrator Ad Litem filed by LuAnn Bennett, and states:

1. Deny paragraph 1 (the separate writing was revoked prior to death, and Decedent assigned all of her tangible personal property to her Trust prior to death).

2. Deny paragraph 2.

3. Admit that Robert had access to Decedent's home subsequent to Decedent's death, and deny the balance of paragraph 3.

4. Deny paragraph 4.

5. Admit that Robert asserts that the tangible personal property memorandum was revoked at the direction of the Decedent, and that his August 27, 2007 letter is attached as Exhibit 2, and without knowledge as to the balance of paragraph 5.

6. Admit that Robert contends that certain items of tangible property may have been stolen, and deny the balance of paragraph 6.

7. Admit that Robert's August 27, 2007 letter is attached as Exhibit 3, and deny the balance of paragraph 7.

*Estate of Betty Koplar Bennett*
*Case No. 502007CP004233XXXXSB*

8. Deny paragraph 8.

9. Deny that Rule 5.120 applies to these facts, and without knowledge as to balance of paragraph 9.

10. Deny paragraph 10.

11. Deny all allegations not otherwise addressed above.

12. Luann Bennett does not have standing in this matter. LuAnn does not qualify as a personal representative and should have filed and served the notice required by Probate Rule 5.310. No tangible personal property is part of the probate estate. A copy of the Decedent's assignment of all of her tangible personal property to her Trust is attached as Exhibit 1.

13. The Counter-Petition fails to state a cause of action for the appointment of an administrator ad litem.

14. Robert is obligated to pay his attorneys a reasonable fee for services rendered in this matter.

WHEREFORE, the Court is respectfully requested to deny the Counter-Petition, award Robert his attorney's fees pursuant to §733.106 (and assess such fees in accordance with §733.106(4)), and grant such other relief deemed proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished by facsimile and U.S. Mail delivery to EDWARD DOWNEY, ESQ., Downey & Downey, P.A., 3601 PGA Boulevard,

Page -2-

*Estate of Betty Koplar Bennett*
*Case No. 502007CP004233XXXXSB*

Suite 302, Palm Beach Gardens, FL 33410, this 15th day of October, 2007.

                                    PRESSLY & PRESSLY, P.A.
                                    Esperante Bldg. - Suite 910
                                    222 Lakeview Avenue
                                    West Palm Beach, Florida 33401
                                    Telephone: (561) 659-4040

                                By: _____
                                    DAVID S. PRESSLY, ESQ.
                                    Florida Bar. No. 294024
                                    Attorneys for Robert S. Bennett

cc:    Barbara Sloan, Esq. (via U.S. Mail)

F:\Bennett\Pleadings\Resp to Counter Pet.wpd

EXHIBIT-1

## ASSIGNMENT OF TANGIBLE PERSONAL PROPERTY

I, BETTY KOPLAR BENNETT, hereby assign all my tangible personal property to BETTY KOPLAR BENNETT, Trustee of the BETTY KOPLAR BENNETT TRUST UNDER AGREEMENT DATED MAY 13, 1992, as amended.

In witness whereof the undersigned hereby sets her hand and seal this __21st__ day of __August__, 2002.

WITNESSES:

_Patricia M. Schen_

_Judith A. Costello_

_____
BETTY KOPLAR BENNETT

STATE OF FLORIDA
COUNTY OF PALM BEACH

Subscribed, acknowledged and sworn to before me by BETTY KOPLAR BENNETT, who is personally known to me or who has produced _____ (type of identification) as identification, on __August 21__, 2002.



_____
NOTARY PUBLIC
Barbara A. Sloan
(Print Name of Notary)
My Commission Expires:

_____
Serial Number, if any

## ACCEPTANCE BY TRUSTEE

I, BETTY KOPLAR BENNETT, TRUSTEE OF THE BETTY KOPLAR BENNETT TRUST UNDER AGREEMENT DATED MAY 13, 1992, as amended, accept the foregoing Assignment.

WITNESSES:

_____
BETTY KOPLAR BENNETT, Trustee

STATE OF FLORIDA
COUNTY OF PALM BEACH

Subscribed, acknowledged and sworn to before me by BETTY KOPLAR BENNETT, who is personally known to me or who has produced _____ (type of identification) as identification, on __August 21__, 2002.

_____
NOTARY PUBLIC, State of Florida
Barbara A. Sloan
(Print Name of Notary)
My Commission Expires: _____

Serial Number, if any _____