UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE KEVIN S. BENNETT TRUST U/A DATED AUGUST 2, 1989, *et al.*,<br><br>    Plaintiffs / Counterclaim Defendants,<br><br>    v.<br><br>ROBERT S. BENNETT, as Trustee for the BETTY KOPLAR BENNETT TRUST AGREEMENT DATED MAY 13, 1992,<br><br>    Defendant / Counterclaim Plaintiff. | Civil Action No. 07-1519 (CKK) |

**MEMORANDUM OPINION**
(June 19, 2008)

The Parties in this case each claim to own and/or control the same 5% share in a limited partnership known as the New Jersey and H Limited Partnership.  Plaintiffs allege that they received the 5% share through a distribution under a 1989 trust agreement.  Defendant alleges that the 5% share was assigned from the 1989 trust to a different trust established in 1992, and that he has the right to control the 5% share based on his status as sole trustee of the 1992 trust.  Currently before the Court is Plaintiffs' [5] Motion to Dismiss Defendant's counterclaim concerning that purported assignment.  After thoroughly reviewing the Parties' submissions, including the attachments thereto, applicable case law and statutory authority, the Court shall grant Plaintiffs' [5] Motion to Dismiss Defendant's counterclaim, for the reasons set forth below.

**I.  BACKGROUND**

Because the facts of this case are significantly more complex than the legal issues they present, the Court shall divide this section into four parts: Part A describes the relevant provisions of the 1989 trust agreement; Part B describes the purported assignment of the 5%

share; Part C describes the Parties' present dispute; and Part D describes the procedural history of this case.

    A.    *The 1989 Trust Agreement*

On August 2, 1989, Richard A. Bennet, Jr. (the "Settlor") established a trust pursuant to the Betty Koplar Bennett Trust Agreement dated August 2, 1989 (the "1989 Trust" and the "1989 Trust Agreement"). *See* Pls.' Mot., Ex. 1 at 1 (1989 Trust Agreement). The initial trustees of the 1989 Trust were the Settlor and the Settlor's mother, Betty Koplar Bennett. *Id.* The trust agreement instructed the trustees to hold and administer the trust's assets for the benefit of its life beneficiary, Betty Koplar Bennett, subject to the terms of the trust agreement. *Id.* at 2 (Art. II.A). Specifically, Betty Koplar Bennett was authorized to request and to distribute (together with her co-trustee) the trust principal to herself:

> [T]he Trustees shall distribute from time to time so much of the principal of the trust, but in no event in excess of One Hundred Thousand Dollars ($100,000) per year (which shall be non-cumulative), as the Settlor's mother may request or as the Trustees may deem advisable for the support, maintenance, or health of the Settlor's mother.

*Id.*

The 1989 Trust nevertheless contained a "spendthrift clause" that prevented Betty Koplar Bennett, as the trust's beneficiary, from assigning any of the trust's pre-distribution assets to a third-party creditor or anyone else:

> No beneficiary of any trust hereunder shall have any right (other than a right to disclaim) to assign, transfer, hypothecate, or otherwise encumber his or her interest in any trust benefits or payments, and no trust assets, benefits or payments in the possession or control of the Trustees shall be subject to any levy or attachment to pay claims (including without limitation claims for alimony or support of any spouse or former spouse) against any beneficiary.

*Id.* at 3 (Art. II.C). In 1990, the Settlor added a 5% share in a limited partnership known as the

New Jersey and H Limited Partnership to the 1989 Trust.[1]  Compl. ¶ 11.

Upon Betty Koplar Bennett's death, the 1989 Trust Agreement provided that the trust would terminate and all remaining trust principal would be divided among the then-living descendants of the Settlor, per stirpes.  Pls.' Mot., Ex. 1 at 3 (1989 Trust Agreement, Art. II.B, II.C).  Each share was to be distributed outright, or if a descendant was under the age of 38, a portion of the share would be distributed into a trust created by the Settlor for each descendent.  *Id.* (Art. II.C).  Plaintiffs in the present action are the three trusts created by the Settlor for his three descendants (The Kevin S. Bennett Trust U/A the Trust Agreement Dated August 2, 1989; The Bryan G. Bennett Trust U/A the Trust Agreement Dated August 2, 1989; and The Richard A. Bennett, III Trust U/A the Trust Agreement Dated August 2, 1989), along with two of the descendants individually (Kevin S. Bennett and Bryan G. Bennett).  Plaintiffs indicate that the youngest of the three descendants, Richard A. Bennett, III, is not an individual Plaintiff because he is not yet entitled to a partial personal distribution from the trust established by the Settlor.  *See* Pls.' Mot. at 8 n. 5.

  B. *The 1992 Assignment*

On July 30, 1992, Betty Koplar Bennett executed an assignment of her interest in the New Jersey and H Limited Partnership to a trust established under the Betty Koplar Bennett Trust Agreement dated May 13, 1992 (the "1992 Trust").  The first page of the assignment reads in relevant part:

  I, BETTY KOPLAR BENNETT, hereby assign all my right, title and interest in

---

[1] Although Defendant indicates that he has insufficient information to confirm or deny this fact, *see* Answer ¶ 11, he proceeds to allege that the 5% share was assigned from the 1989 Trust to the 1992 Trust, *see* Counterclaim ¶¶ 10-12.  Therefore, Defendant agrees that the 5% share was added to the 1989 Trust at some time between 1989 and 1992.

> the partnership NEW JERSEY AND H STREET LIMITED PARTNERSHIP . . . to the following Grantee: BETTY KOPLAR BENNETT, TRUSTEE OF THE BETTY KOPLAR BENNETT TRUST U/A DATED MAY 13, 1992.[2]

Def.'s Opp'n, Ex. A at 1 (July 30, 1992 Assignment). The assignment is signed by "Betty Koplar Bennett." *Id.* The second page is titled "Acceptance by Trustee" and reads in relevant part:

> I, BETTY KOPLAR BENNETT, TRUSTEE OF THE BETTY KOPLAR BENNETT TRUST U/A DATED MAY 13, 1992, accept the foregoing assignment.

*Id.* at 2. This page is signed by "Betty Koplar Bennett, Trustee." *Id.* The third and final page is titled "Acceptance of Assignment by General Partner," and reads in relevant part:

> I, RICHARD A. BENNETT, JR., as General Partner of the NEW JERSEY AND H STREET LIMITED PARTNERSHIP, accept the foregoing Assignment.

*Id.* at 3.

    C.    *The Present Dispute*

Although the implications of the 1992 assignment appear to be straightforward, a closer reading of its text reveals otherwise. For example, Betty Koplar Bennett purports to assign her interest in the New Jersey and H Limited Partnership, but she had no individual interest to assign – the 5% share was owned by the 1989 Trust, and the trust's spendthrift clause prevented Betty Koplar Bennett from assigning her interest as a beneficiary of the trust. *See* Pls.' Mot., Ex. 1 at 5 (1989 Trust Agreement, Art. III.C). The assignment also purports to assign the 5% share to the 1992 Trust. The 1989 Trust Agreement, however, only authorized distributions to its

---

[2] The assignment refers to the partnership as the "New Jersey and H *Street* Limited Partnership," and Defendant does not indicate whether he believes the addition of the word "street" is a scrivener's error. Nevertheless, the Court's granting of Plaintiff's Motion obviates the need to further pursue this inquiry.

beneficiary, Betty Koplar Bennett. *Id.* at 2 (Art. II.A). Such a distribution would also require the agreement of the 1989 Trust co-trustees. The assignment, however, was only authorized by Betty Koplar Bennett individually, Betty Koplar Bennett as trustee of the 1992 Trust, and Richard A. Bennett as general partner of the New Jersey and H Limited Partnership (i.e., neither co-trustee executed the assignment in his or her capacity as a co-trustee of the 1989 Trust).[3]

Betty Koplar Bennett died on May 31, 2007. Compl. ¶ 14. Following her death, Defendant sought to vote the 5% share of the New Jersey and H Limited Partnership. *Id.* ¶ 16. Plaintiffs assert that, in accordance with the terms of the 1989 Trust, the remaining principal of the trust (i.e., the 5% share in the New Jersey and H Limited Partnership) was distributed to Plaintiffs and their trusts. *Id.* ¶ 15. Defendant maintains that the 1992 assignment transferred the 5% share of the partnership from the 1989 Trust to the 1992 Trust, for which Defendant is the sole trustee. Counterclaim ¶ 10-12.

D.   *Procedural History*

Plaintiffs filed a Complaint for a declaratory judgment and injunctive relief on August 24, 2007, seeking a judicial declaration that they are the true owners and/or trustees of the 5% share of the New Jersey and H Limited Partnership. Defendant filed an Answer and counterclaim on September 17, 2007. Plaintiffs responded on October 9, 2007, with the instant Motion to Dismiss Defendant's counterclaim. Defendant filed an Opposition on October 22, 2007, and Plaintiffs filed a Reply on November 1, 2007. Prior to resolution of the instant Motion, the Parties jointly contacted Chambers concerning a dispute as to whether they should proceed with discovery. *See* Min. Order dated April 4, 2008. The Court stayed all non-consensual discovery

---

[3] The Parties do not dispute the validity of the signatures on the pages of the 1992 assignment. *See* Pls.' Mot. at 7; Def.'s Opp'n at 5.

pending resolution of the instant Motion.  *Id.*

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id*. at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp.*, 127 S. Ct. at 1965 (citations omitted).  The same standards govern a motion to dismiss a counterclaim.  *See Ellipso, Inc. v. Mann*, Civ. A. No. 05-1186, 2006 U.S. Dist. LEXIS 23710 at *3 (D.D.C. Apr. 27, 2006).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the counterclaim in a light most favorable to the counterclaimant and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  The court may also consider documents that are referred to, and central to, the counterclaim.  *See Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (finding that a document that is "referred to in the complaint and is central to plaintiff's claim" may be considered without

converting the motion to dismiss into one for summary judgment).

### III.  DISCUSSION

Plaintiffs argue that the 1992 assignment is void because the spendthrift clause in the 1989 Trust Agreement prevented Betty Koplar Bennett from assigning her interest in the trust's assets.[4]  Pls.' Mot. at 9-14.  The spendthrift clause specifies that "[n]o beneficiary of any trust hereunder shall have any right . . . to assign . . . his or her interest in any trust benefits or payments."  *Id.*, Ex. 1 at 5 (1989 Trust Agreement, Art. III.C).  Because the assignment indicates that Betty Koplar Bennett attempted to assign her individual interest as a beneficiary of the trust, Plaintiffs claim that the spendthrift clause rendered her assignment void.  Pls.' Mot. at 9-14.[5]

Defendant seeks to avoid this result by re-writing the language of the assignment. Defendant first suggests that Betty Koplar Bennett assigned her interest in her capacity as co-trustee of the 1989 Trust, and not as a beneficiary of the trust.  Defendant next suggests that the partnership interest was assigned to Betty Koplar Bennett as a beneficiary of the 1989 Trust, and not to the 1992 Trust.  Defendant also suggests that the transaction was approved by the co-trustees of the 1989 Trust, even though each trustee executed the assignment in other capacities. The Court finds each of these propositions to be untenable.

<u>First</u>, the 1992 assignment unambiguously states that Betty Koplar Bennett was not acting in her capacity as a co-trustee of the 1989 Trust.  The assignment indicates that she is assigning

---

[4] The 1989 Trust Agreement provides that it "shall be governed in all respects in accordance with the laws of the Commonwealth of Virginia," Pls.' Opp'n, Ex. 1 at 5 (Art. III.H), and neither Party sets forth any reason to question the application of Virginia law to this dispute.

[5] Plaintiffs also suggest that, if the assignment were not void, Betty Koplar Bennett could only have assigned her life interest in the partnership.  Pls.' Mot. at 14-15.  Because the Court finds that the assignment was void, the Court does not reach this argument.

her *individual* interest in the partnership, *see* Def.'s Opp'n, Ex. A at 1 ("I, Betty Koplar Bennett, hereby assign all *my* right, title and interest in the partnership") (emphasis added), and she signs the page in her individual capacity, *id.* ("Betty Koplar Bennett").  She is also clearly aware that she can act in the capacity of a trustee because, on the very next page, she explains that she is accepting the assignment as trustee of the 1992 trust, *id.* at 2 ("I, Betty Koplar Bennett, Trustee of the Betty Koplar Bennett Trust U/A Dated May 13, 1992"), and she signs the page in her capacity as trustee of the 1992 Trust, *id.* ("Betty Koplar Bennett, Trustee").  Moreover, there is no reference to Betty Koplar Bennet's status as a co-trustee of the 1989 Trust, nor even an oblique reference to the 1989 Trust.

       Defendant argues that "spendthrift provisions do not restrict Trustees from making distributions that are authorized in the trust instrument," and further that "Plaintiffs would have the court believe that the Settlor specifically provided in Article II of the Trust Agreement that his mother would have a withdrawal right of up to $100,000 per year and then took it away in Article III."  Def.'s Opp'n at 6.  Defendant's arguments in this respect are both uncontested and wholly irrelevant.  Plaintiffs do not dispute that Betty Koplar Bennett had the *authority* to grant herself (together with her co-trustee) the principal from the trust of up to $100,000 per year – they argue that such a transaction did not *actually* occur.  *See* Pls.' Reply at 11 ("Plaintiff's have no quarrel with Betty's personal right, as a beneficiary, to request and receive distributions under the 1989 Trust, subject to the strictures of Article II.A, but that simply is not what is at issue in the 1992 Assignment") (emphasis in original omitted).

       Defendant next argues that the 5% share of the partnership was *not* owned by the 1989 Trust but was instead owned by the co-trustees, suggesting that Betty Koplar Bennett could dispose of the partnership interest regardless of whether she was acting as co-trustee at the time

of the assignment. See Def.'s Opp'n at 9-10. Defendant grounds this novel idea on a Virginia law that, according to Defendant, makes trustees "the legal owners of the property [in a trust] 'with all powers over the trust property that an unmarried competent owner has over individually owned property.'" Id. at 9-10 (quoting Va. Code Ann. § 55-548-15.2.a). A review of this Virginia statute reveals its lack of support for Defendant's position. The statute provides, in relevant part:

> A trustee, without authorization by the court, may exercise:
>
> 1. Powers conferred by the terms of the trust; and
>
> 2. Except as limited by the terms of the trust:
>
> a. All powers over the trust property that an unmarried competent owner has over individually owned property.

Va. Code Ann. § 55-548-15. As is obvious from the quoted text, the statute does not state that trustees are *owners* of property held in a trust, but rather explains that trustees may exercise powers conferred but *limited* by the terms of the trust. In this case, the co-trustees' authority was circumscribed by the 1989 Trust Agreement that prevented distributions except as provided therein. Accordingly, Betty Koplar Bennett could not, unless she was acting in her capacity as co-trustee and consistent with the terms of the 1989 Trust Agreement, assign the trust's assets as if she had full ownership over them.

Second, the 1992 assignment unambiguously states that Betty Koplar Bennett is assigning the partnership interest to the 1992 Trust, not to herself as a life beneficiary of the 1989 Trust. The first page assigns the interest to "Betty Koplar Bennett, Trustee of the Betty Koplar Bennett Trust U/A Dated May 13, 1992." Id. at 1. The second page states that Betty Koplar Bennett accepts the transferred interest in her capacity as trustee of the 1992 Trust. Id. at 2 ("I, Betty

9

Koplar Bennett, Trustee of the Betty Koplar Bennett Trust U/A. Dated May 13, 1992, accept the foregoing Assignment"). There is no dispute between the Parties that the 1989 Trust Agreement authorized distributions only to the beneficiaries of the 1989 Trust, and that the 1992 Trust was not a beneficiary.

Defendant argues that the assignment "can only reasonably be read to reflect Betty-as-Trustee's distribution of principal to Betty-as-beneficiary," because "there can be no serious dispute concerning the intentions of the two Trustees: they intended to and did transfer the Betty 1989 Trust's interest in the Partnership to the Betty 1992 Trust." Def.'s Opp'n at 11. This argument fails because the trustees' intentions, whatever they may have been, cannot override the unambiguous language of the assignment. *See Elmore v. Virginia Nat'l Bank*, 350 S.E.2d 603, 607 (Va. 1986) (affirming the lower court's exclusion of intent evidence because "there was no ambiguity in the language of the trust instrument"). *See also NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 681 (D.C. Cir. 1985) ("Where the language of a contract is clear and unambiguous on its face, a court will assume that the meaning ordinarily ascribed to those words reflects the intentions of the parties"). Thus, the Court must give effect to language of the assignment as written, not based on how Defendant would choose to characterize the trustees' intentions.

Third, the 1992 assignment is unambiguously executed by Betty Koplar Bennett and Richard A. Bennett, Jr. in capacities other than as co-trustees. The first page is signed by Betty Koplar Bennett in her individual capacity. Def.'s Opp'n, Ex. A at 1 ("Betty Koplar Bennett"). The second page is signed by Betty Koplar Bennett in her capacity as trustee of the 1992 Trust. *Id.* at 2 (accepting the assignment on behalf of the 1992 Trust and signing "Betty Koplar Bennett, Trustee"). The third page is signed by Richard A. Bennett, Jr. in his capacity as General Partner of the New Jersey and H Limited Partnership. *Id.* at 3 ("I, Richard A. Bennett, Jr., as General

Partner of the New Jersey and H Street Limited Partnership, accept the foregoing Assignment"). Richard A. Bennett Jr.'s signature also appears nowhere on the "assignment" page that was purportedly (but implicitly) operating as a distribution from the 1989 Trust to Betty Koplar Bennett as the life beneficiary.

Defendant argues that "it is irrelevant that Betty and the Settlor did not explicitly use the word 'trustee' on the assignment papers making and approving the transfer." Def.'s Opp'n at 11. Defendant relies on *Needham v. Legge*, 70 Va. Cir. 337, 338-39 (Va. Cir. Ct. 2006), as support for this argument, but that case is easily distinguishable. In *Needham*, the Court found that the failure to include the word "trustee" on the signature lines of a Deed of Transfer was not dispositive because the deed's granting clause specified that the individuals were acting as trustees. *Id.* at 339. In this case, not only does the text of the 1992 assignment fail to specify that Betty Koplar Bennett is acting in her capacity as co-trustee of the 1989 Trust, but it states just the opposite – it indicates that she is acting in *other* capacities. Moreover, *Needham* does not upset the well-settled rule that the capacity in which a party signs an agreement (or otherwise describes a person's capacity) is a reflection of the capacity in which that person is acting. *See, e.g.*, *Pioneer Nat'l Title Ins. Co. v. Cranwell*, 369 S.W.2d 678, 680 (Va. 1988).

For all of these reasons, the Court agrees with Plaintiffs that the unambiguous language of the assignment indicates that Betty Koplar Bennett was not acting in her capacity as co-trustee of the 1989 Trust for purposes of the 1992 assignment, and that she could not have assigned the 5% share of the partnership because of the spendthrift clause contained in the 1989 Trust Agreement.

One final issue remains. Defendant argues that "even if Plaintiffs could show that the assignment documents were insufficient," the statute of limitations or doctrine of laches prevents dismissal of Defendant's counterclaim. Def.'s Opp'n at 12. This argument fails because these

legal principles may be invoked to prevent Plaintiffs from asserting their own claims, but they cannot somehow resurrect or "fix" Defendant's legally deficient claim (i.e., the passage of time does not allow Defendant to advance an otherwise non-cognizable claim).  Defendant may raise (and has already raised) the statute of limitations and doctrine of laches as affirmative defenses to Plaintiffs' claims in his Answer, s*ee* Def.'s Answer at 5, but such arguments are simply immaterial to the instant Motion.[6]

## CONCLUSION

For the reasons set forth above, the Court shall grant Plaintiffs' [5] Motion to Dismiss Defendant's counterclaim.  An appropriate Order accompanies this Memorandum Opinion.

Date: June 19, 2008

```
                                   /s/
                          COLLEEN KOLLAR-KOTELLY
                          United States District Judge
```

---

[6] The Court does not express any judgment, one way or the other, on the viability or the merits of such defenses.